HALL, Chief Judge.
Plaintiffs-appellees, Faces B. Pringle and Albert Gibson, Jr. were awarded $5,507.00 and $2,900.00 respectively by the trial court as damages resulting from an accident when Gibson’s truck, driven by Pringle, ran off Highway 1 north of Vivian in rural Caddo Parish. The trial court found that the steering wheel of the truck malfunctioned due to the negligent repair of an ignition switch on the steering column of the truck by defendant-appellant, Williamson Chevrolet, Buick, Pontiac, Inc. Williamson and its insurer, the Ohio Casualty Insurance Company, appealed urging that the trial court’s finding of fault was in error. Pringle has answered the appeal seeking an increase in the damages awarded. Finding no error in the judgment of the trial court, we affirm.
On the afternoon of December 9, 1983 Faces Pringle went to Williamson Chevrolet, Buick, and Pontiac in Vivian to pick up the truck of Albert Gibson, Jr., Ms. Prin-gle’s boyfriend. The truck, a 1975 Chevrolet Silverado, had previously been taken to Williamson to repair the ignition switch in which a key had broken off.
After leaving Williamson in the truck, Pringle travelled north on Highway 1 and was followed by one of her employers, D.E. Holt. Pringle testified that approximately five miles north of Vivian on Highway 1 near Myrtis the steering wheel locked causing her to lose control of the truck, exit the highway, and strike a utility pole. Ms. Pringle sustained a shoulder and neck injury and the truck was totalled.
LIABILITY
Defendants contend that the judgment of the trial court is clearly wrong under the standard of appellate review set forth by the Louisiana Supreme Court in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). In Watson, the court held:
Upon appellate review Louisiana courts have jurisdiction with regard to both law and facts. La. Const, art. V, § (B). However we have held that
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences aré as reasonable. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
This standard of appellate review was not intended to be applied so as to require upholding the ruling of a trial court simply, “when the evidence before the *931 trier of fact furnishes a reasonable basis for its findings.” Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Instead, a finding of fact by a trial court should be upheld “unless it is clearly wrong.” And “appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court.” Id. Proper review requires that the appeal court determine from the record that the trial court finding is not clearly wrong or manifestly erroneous.
Defendants’ principal contention on appeal is that the trial court was clearly wrong in apparently concluding that the steering wheel came off of the steering shaft even though Ms. Pringle testified that the steering wheel locked. Although it is uncertain as to exactly what happened to the steering mechanism of the truck, we find that the trial court was not clearly wrong in concluding that the steering mechanism malfunctioned and that the malfunction occurred due to the negligence of the defendant Williamson Chevrolet, which conclusion is supported by substantial evidence.
In support of plaintiffs assertion that the steering wheel of the truck locked, the plaintiff offered the testimony of her employer, D.E. Holt, the testimony of the driver of the car preceding her on Highway 1, Timothy Chelette, and the testimony of a mechanic, Willie Lee Brown.
Mr. Holt testified that he had given Ms. Pringle a ride to Williamson Chevrolet in Vivian to pick up the truck. Mr. Holt stated that Ms. Pringle was approximately one quarter of a mile ahead of him when he observed the vehicle as it approached a curve, slid sideways off of the highway into a ditch, and hit a utility pole. As Mr. Holt stopped, Ms. Pringle crawled out of the truck and up the bank of the highway in an apparent state of shock stating, “the steering wheel would not turn.”
Timothy Chelette testified that as he was travelling north on Highway 1 he observed Ms. Pringle in the truck behind him jerking on the steering wheel of the truck and appearing very frightened. Mr. Chelette testified that as the truck approached the curve, the front wheels of the truck suddenly turned to the left and the truck exited the highway.
Willie Brown, a mechanic, testified that approximately two weeks after the accident occurred, he bought the truck for salvage and went to the wrecking yard where the truck was located. According to Mr. Brown, when he attempted to tow the truck from the its rear with his wrecker, he could not pull it because the steering wheel of the truck was locked. Mr. Brown stated that he found that a nut and lockwasher within the steering column were laying loose and the lock ring was missing. He felt that this was the reason the steering wheel was locked. Mr. Brown also testified that he had known Mr. Gibson for ten to twelve years and was pretty good friends with Mr. Gibson.
The contention that the steering wheel of the truck locked was contradicted by the defense testimony of a deputy who investigated the accident, R.S. Shafitt, the owner of the wrecking yard where the truck was taken, Jimmy Bounds, and his son, Tommy Bounds, and also by the testimony of David Horn, the mechanic at Williamson Chevrolet who worked on the truck. Deputy Saf-itt, Jimmy Bounds, and Tommy Bounds, each testified that at the wrecking yard after the accident had occurred, they reached in and turned the steering wheel of the truck and that it moved freely and the tires moved freely.
Mr. Horn testified that it was his opinion that it was impossible for the steering wheel to have locked. According to Horn, the absence of the nut on the steering column would not cause the steering wheel to lock but might cause the steering wheel to come off the steering shaft into the driver’s hands. He testified that if the steering wheel pulled up to a certain point, it was possible that the driver would not have control of the direction of the wheels.
Although there is contradictory testimony as to what happened or could have *932 happened to the steering mechanism of the truck, we find that the trial court was not clearly wrong in concluding that the steering mechanism malfunctioned and that Williamson Chevrolet was responsible for the malfunction. Specifically, the steering column of the truck had been taken apart and worked on at Williamson Chevrolet and the truck was driven only a short distance to where the accident occurred. The trial court correctly placed great weight upon the testimony of Timothy Chelette, the driver preceding Ms. Pringle, who said that “she had both hands on the wheel — trying to maneuver, but it just wouldn’t go.” Mr. Chelette had no interest in the litigation and his testimony corroborated Ms. Prin-gle’s testimony of how the accident occurred. There is substantial creditable evidence supporting the trial court’s finding that the steering mechanism malfunctioned, causing the driver to be unable to steer the truck around the curve, either because the steering wheel locked or because it was disengaged and would not control the wheels. The trial court was not clearly wrong in its finding of fault on the part of the defendant.
DAMAGES
Plaintiff Faces Pringle answered the appeal seeking an increase in the award of damages by the trial court. The trial court awarded plaintiff Pringle general damages of $3,500.00, lost earnings of $1,500.00, and medical expenses of $507.00, for a total of $5,507.00.
Pringle contends that the court’s award for general damages and lost earnings is inadequate. She contends that she proved that she worked three days a week at $20.00 per day and she testified that as of the date of the trial she still could not work. Pringle asserts that this fact is corroborated by her two employers who testified, D.E. Holt and Barbara Gardner. Pringle asserts that she is entitled to lost earnings from the date of the accident on December 9, 1983 to the date of the trial on March 21, 1985 for a total award for lost earnings of $4,020.00. Pringle seeks an increase in her award for general damages to an amount that will fully compensate her for her damages.
Before an appellate court can disturb an award made by a trial court the record must clearly reveal that the trier of fact abused its discretion in making the award to the plaintiff. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Cutchall v. Great American Pump Co., 460 So.2d 1106 (La.App. 2d Cir.1984). In determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Wilson v. Aetna Cas. & Sur. Co., 401 So.2d 500 (La.App. 2d Cir. 1981). When a claim for lost wages cannot be proved with mathematical certainty, it can be estimated by any proof that reasonably establishes the claim, such as plaintiff’s own testimony. The courts have reasonable discretion to assess damages based upon all the facts and circumstances of the case. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971); Erdey v. Steib, 392 So.2d 131 (La.App. 1st Cir.1980). Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is inadequate. Reck v. Stevens, 373 So.2d 498 (La.1979); Cutchall v. Great American Pump Co., supra.
After the accident on December 19, 1983, Ms. Pringle saw Dr. Alfred Bolch complaining of pain in the left shoulder, neck and the right knee resulting from the accident on the previous Saturday. It was Dr. Bolch’s diagnosis that Ms. Pringle had sprained her left shoulder and suffered a concussion. Dr. Bolch also indicated that these injuries were consistent with the trauma that Ms. Pringle must have sustained in the motor vehicle accident. Dr. Bolch prescribed pain medication for Ms. Pringle and saw her once again the follow *933 ing January. On that occasion, Ms. Pringle continued to express complaints concerning her left shoulder and neck. Dr. Bolch testified that her condition had improved but that it was still significantly painful and limiting to Ms. Pringle. As of January 13, Dr. Bolch felt like that Ms. Pringle was unable to return to work. Dr. Bolch did not see Ms. Pringle again.
Dr. Bolch also testified that he is unable to give a prognosis for Ms. Pringle since in his practice some patients continue to improve and gradually get back to full function and some patients continue to have inflammation and pain. The doctor testified that ordinarily, a condition like Ms. Pringle’s would gradually resolve itself over the course of several weeks.
Dr. Thomas A. Edwards saw Ms. Pringle on May 11, 1984 at which time Ms. Pringle told the doctor that she had injured her lower back and neck in an automobile accident. It was Dr. Edwards diagnosis that' Ms. Pringle had a cervical sprain. Dr. Edwards again saw Ms. Pringle on July 13, 1984 at which time Ms. Pringle continued to complain of increased soreness and pain in her neck. Dr. Edwards prescribed anti-inflammatory medication and instructed Ms. Pringle to perform isometric exercises to increase the motion in Ms. Pringle’s neck. Dr. Edwards continued to. see Ms. Pringle until September 21, 1984, at which point Ms. Pringle continued to complain of pain and soreness in her neck; however, Dr. Edwards felt that some 8 or 9 months after the accident it was a waste of a patient’s time and money to continue any additional treatment since the possibilities of any improvement were pretty slim. It was Dr. Edward’s opinion that Ms. Prin-gle’s complaints were consistent with the accident and that Ms. Pringle will probably continue to have soreness in her neck for the next year or so. It was Dr. Edward’s feeling that Ms. Pringle’s condition is more of an “aggravation” than what he would call a “severe disability.”
Ms. Pringle did not seek treatment by any physician from the last time she saw Dr. Edwards in September, 1984 to the date of the trial in March, 1985. It was the trial court’s opinion that Ms. Pringle was not hurt as badly as she indicated. The trial court’s opinion is supported by both Dr. Bolch and Dr. Edwards who indicated that ordinarily, patients recover from this type of injury within six months to a year. Neither doctor stated that Ms. Pringle was disabled from working after January of 1984. Although Dr. Edwards verified plaintiff was still experiencing some symptoms of her injury when he last saw her in September, 1984 he did not describe her symptoms as disabling. The trial court had the opportunity to observe Ms. Pringle’s testimony and assess her credibility concerning the extent of her injuries and disabilities. An analysis of the facts and circumstances in the present case does not indicate that the trial court abused its discretion in assessing damages.
DECREE
Finding no error in the judgment of the trial court, we affirm at appellant’s cost.
AFFIRMED.