516 So.2d 1183 (1987)
James W. BRUCE, Jr., Plaintiff-Appellant,
v.
James WILLIAMS, et al., Defendants-Appellees.
No. 19086-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
Mary Simonton Cowles, Shreveport, for plaintiff-appellant.
Nelson & Achee Ltd. by Henry M. Bernstein, Shreveport, for defendants-appellees.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
*1184 MARVIN, Judge.
In this action arising out of a motor vehicle collision, plaintiff appeals to seek an increase in the $12,500 general damages awarded him for the aggravation of his pre-existing degenerative disc disease by the cervical myoligamentous strain he sustained in the collision.
Plaintiff was also awarded past medical expenses. The only issue is whether the trial court abused its great discretion in the assessment of general damages. The evidence conflicted as to plaintiff's activities before and after the 1984 accident.
We amend to increase the judgment and affirm the amended judgment.

FACTS
Plaintiff's two-ton truck was struck from behind by a ¾ ton city-owned pick-up and trailer that was being driven by defendant Williams on July 23, 1984. Plaintiff stopped his truck on Kings Highway in Shreveport to yield to turning traffic. The city's truck sustained the greater damage, the estimated cost of repairing the truck of plaintiff's employer being $242.
The 59-year-old plaintiff, while working as a truck driver and warehouseman in April 1983, suffered injuries to his lower extremities when he was struck by a falling crate. His worker's compensation action for total and permanent disability benefits arising out of the 1983 accident was pending when this tort action was filed. Plaintiff continued working for about a month after the 1984 collision.
Plaintiff's orthopedist began treating his neck strain on August 6, 1984, and prescribed analgesic and anti-inflammatory medication, heat, therapy, and isometric exercises. Objective symptoms (muscle spasms) abated in September 1984, according to the orthopedist, but plaintiff's subjective symptoms persisted to the date of the trial, June 12, 1986.
In January 1985, plaintiff's orthopedist assigned a 5-10 percent anatomical disability rating to plaintiff as a result of the myoligamentous strain being superimposed on the pre-existing degenerative disc disease. The orthopedist opined that plaintiff's cervical strain and disease had "reached a plateau ... [that his] symptoms may worsen, but ... on a very slow basis [and that] ... he's probably looking at what he's going to have in the future." The orthopedist released plaintiff from further treatment in April 1985, concluding and later testifying that plaintiff would have "intermittent chronic-type pain in the neck, which might require intermittent analgesics and probably anti-inflammatory medicine."
Plaintiff admitted that he had not engaged in leisure activities such as fishing, hunting, and working in his yard following his 1983 accident. He admitted that he had difficulty performing some of the duties of his job after the 1983 accident and before the 1984 collision. Plaintiff's wife and son effectively acknowledged that some of plaintiff's physical-leisure activities were limited after the 1983 accident and before the 1984 collision.
Defendants also showed that plaintiff, a long-time auxiliary policeman for the city, worked 448 hours in that capacity during the 17 months after the 1984 collision. Plaintiff denied that he directed traffic at a church after the collision on three successive Sundays in September and October 1984, as one witness testified. Some of the lay witnesses called by plaintiff to compare his activities before and after the 1984 collision failed to fully corroborate plaintiff. Plaintiff testified that his activities after the 1984 collision were more limited than before. On the evidence which we have summarized, the trial court concluded:
[Plaintiff] has suffered considerably more from this accident than from a normal neck strain. His injuries have resulted in an interruption and ultimate discontinuance of his activities as an auxiliary policeman which the plaintiff enjoyed for many years. Further, he is now unable to engage in many activities that he enjoyed prior to this accident. All of these matters considered, the court awards the plaintiff the sum of $12,500 in general damages, plus all specials ...
*1185 The record does not suggest how long plaintiff might have worked had he not sustained the neck strain in the 1984 collision.
We are mandated to view the evidence in the light that most favorably supports the judgment, recognizing the trial court's great discretion in assessing damages. Likewise, we recognize that a tortfeasor takes his victim as he finds him and that a plaintiff has the burden of proving that the injury or aggravation resulting from the tortfeasor's conduct more probably than not caused the ultimate disability of which he complains.
We shall not speculate as to what the trial court meant by the term normal neck strain or where the normal neck strain might fall within the range of general damage awards in the many cases considering cervical injuries. See Pringle v. Williamson Chev., Buick & Pontiac, 480 So.2d 929 (La.App. 2d Cir.1985); Lindsay v. Toys, 499 So.2d 462 (La.App. 2d Cir.1986); Schexnayder v. State, 477 So.2d 1175 (La.App. 1st Cir.1985).
We do note Lacour v. Travelers Ins. Co. 502 So.2d 209 (La.App. 3d Cir.1987), wherein an adult male of unstated age was predisposed to cervical injury because of "several prior accidents" and was required to take "two pain pills every night for pain." Lacour's doctor recommended that he should undergo a neurotomy (neck surgery) or continue physical therapy. Lacour also sustained a knee cartilage injury which successfully healed following arthoscopic surgical repair. Lacour's knee was pain-free after surgery and he was assigned a 10-15 percent partial impairment of the knee. The appellate court decreased the award for medical specials, past and future, from $18,500 to $12,410. The jury awarded $10,000 general damages which the appellate court deemed was impermissibly low. The appellate court increased the general damage award, applying Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), to $15,000.
Here the trial court did not attempt to itemize the award but obviously considered several elements of damage (more than a normal neck strain, interruption and discontinuance of vocational and avocational activities). Plaintiff contends, but did not introduce supporting opinion evidence, that he quit his job in August 1984 because of pain from the neck strain. Plaintiff alleged in his worker's compensation action that his inability to work stemmed from the 1983 on-the-job accident.
In view of the trial court's specific findings that the 1984 collision caused an interruption and [accelerated the] ultimate discontinuance of some of plaintiff's activities, and in the light of the particular circumstances of this plaintiff, we deem the award impermissibly low. We shall amend to increase the judgment to $20,000. Coco, supra.

DECREE
Accordingly, the judgment is amended to increase the general damage award to $20,000. As amended, the judgment is affirmed at appellee's cost.
AMENDED AND AFFIRMED.