521 So.2d 766 (1988)
Sue ZEAGLER, Plaintiff-Appellee,
v.
DILLARD DEPARTMENT STORES, INC. and Liberty Mutual Insurance Company, In Solido, Defendants-Appellants.
No. 19356-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
*767 Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendants-appellants.
C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for plaintiff-appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
MARVIN, Judge.
In this action for damages arising out of a slip and fall by a shopper in a department store and after a trial by jury, the store appeals a JNOV that assessed all fault to the store and awarded the shopper $15,000 *768 in general damages, plus $5,800 in special damages.
The jury, apparently making no attempt to allocate fault that would total 100 percent, found the store 20 percent at fault and the plaintiff 50 percent at fault. The judgment based on the jury verdict awarded plaintiff $5,125 (one-half of the total of $4,450 general damages and $5,800 special damages).
We affirm the JNOV insofar as it allocates fault. We amend the JNOV to reduce the general damages to $12,000. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The trial court rendered JNOV on the finding that "there was no evidence upon which the jury could have based a finding that plaintiff was 50 percent negligent."
The store contends that the trial court misapplied the standard for JNOV and that the judgment should be amended to conform to the jury's assessment of fault and damages. The store also contends that it should not have been required to pay to the clerk of the trial court the accrued costs attributable to plaintiff in order to suspensively appeal and that, in any event, the costs below and here should be allocated according to the jury verdict's allocation of fault.

FACTS
The 65-year-old plaintiff, Ms. Zeagler, joined her adult daughter to shop at a Bossier City mall on a weekday in May, 1985. While away from her daughter, she entered the defendant department store about noon and there slipped on a white plastic clothes clip which was on the wooden parquet floor inside the store's entrance. The white plastic clip, which measures 1½" × 3/8" × ¼", is here depicted:

Ms. Zeagler was 5'6" tall and weighed 165 lbs. She said:
My right foot just turned and it threw me forward. And I hit the floor on my right side and twisted my ankle, hurt my ankle and even my head and my shoulder.
She said she got up off the floor, placed the clothes clip in her purse, and hurriedly left the store to avoid further embarrassment. Shortly thereafter she met her daughter as planned and told her about having fallen and hurt herself. They drove to a Bossier restaurant to eat lunch. She said several people saw her fall, but she produced no witnesses to testify to the event at trial.
A waitress-friend at the restaurant testified that when Ms. Zeagler and her daughter entered, Ms. Zeagler complained to her about just having slipped and fallen at defendant's store in the Bossier mall. Ms. Zeagler's employer, her daughter and son-in-law, and two doctors that treated her also testified that Ms. Zeagler attributed her complaints to the slip and fall in the store on May 16. Plaintiff returned to the store on May 27 to report the fall to store supervisors. She was referred to an insurance claims adjuster who recorded her statement on May 29.
One or more of four employees of defendant's cosmetics department that is adjacent to the entrance of the store where Ms. Zeagler fell, would have been working on May 16. These employees testified that they did not recall plaintiff falling.
Other store employees testified that the floors are inspected, particularly for such objects as clothes clips that would damage vacuum cleaners, before the store opened each morning. At that time the carpets are vacuumed and the parquet floors are dust mopped. Maintenance workers thereafter normally make periodic inspections of the floor "about every 30 minutes," according to the maintenance supervisor. The supervisor said that the store, however, maintained no record of these inspections, or whether or when the normal inspections were made before noon on May 16.
The sales manager for cosmetics and ladies' clothing testified that clothes clips are removed from clothing in the back of the sales area before clothes are hung for display and sale and that each sales employee is responsible for policing the floor in his or her area. The clothes clip could have come *769 from defendant's store or from another store in the mall.

MEDICAL EVIDENCE
Plaintiff first saw a general practitioner 11 days after the fall. She saw an orthopedist between July 3 and December 26, 1985, on nine occasions. She was treated as an outpatient at her hometown hospital through December 1985. She complained of pain in her neck, back, foot, and shoulder and was given prescriptions for pain and inflammation, cortisone injections, physical therapy, and exercises.
The general practitioner diagnosed osteo-arthritis and cervical strain. The orthopedist eventually diagnosed degenerative disc disease as well as a "Martin's Neuroma," a nerve dysfunction between the third and fourth toes of plaintiff's right foot. Neck motion was limited by 30 percent. Back motion was limited by 20 percent.
Notwithstanding her pre-existing osteo-arthritis and degenerative disc, plaintiff told her doctors and testified that she had not experienced pain or limited motion before her fall. To the time of trial in February 1987, Ms. Zeagler, who worked as a sitter-practical nurse for an elderly bedridden gentleman and his wife, lost 695 hours of work because of her treatments and her condition, but had continued to perform most of her duties except heavy lifting of her patient and mopping of the floor. Plaintiff was awarded special damages by the JNOV which are not at issue in this appeal.
The orthopedist testified that Ms. Zeagler's complaints were not fabricated and that she would continue to experience pain during her lifetime. He assigned a four percent permanent disability of the body and opined that her condition was aggravated and rendered symptomatic by the fall. The general practitioner also opined that plaintiff's injuries and aggravations were caused and were rendered symptomatic by the fall. Defendant did not produce medical expert witnesses.

JUDGMENT NOTWITHSTANDING THE VERDICT
By JNOV, the trial judge may correct a legally erroneous verdict by either or both modifying fault and damages that the jury may have assessed. CCP Art. 1811. See Hardin v. Munchies Food Store, 523 So.2d 1321 (La.App. 2d Cir.1988).
CCP Art. 1811 and its interpretation derive from FRCP. When the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the JNOV motion is proper. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 at 273 (La.1986), citing Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969).

COMPARATIVE FAULT
Defendant speculates that the jury had doubts "as to whether the accident even occurred." Such speculation does not compel a finding that plaintiff was negligent. The jury found that the store was at fault and that plaintiff's injuries were caused by that fault. We must determine whether the jury's finding that plaintiff's negligence contributed to her injuries is so unreasonable that JNOV is warranted.
When granting the JNOV on the issue of comparative fault, the trial judge does not substitute his evaluation of the evidence for that of the jury. See Stafford v. Unsell, 492 So.2d 94 (La.App. 1st Cir. 1986). The party against whom a motion for JNOV is made must be given the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. Hardin v. Munchies Food Store, 510 So.2d 33, 34 (La.App. 2d Cir. 1987).
No witnesses testified at trial about the fall other than plaintiff. There was no evidence that plaintiff was walking too fast or that she was unobservant or otherwise careless. Defendant also speculates that "the jury may have felt [plaintiff] should have been on a greater lookout for any objects that may have been on the floor." Any such reasoning on the jury's part *770 would have been legally erroneous and subject to being corrected by JNOV.
The size and color of the clothes clip make it extremely difficult to see. Shoppers simply do not have a duty to meticulously and vigilantly watch over the floors of retail stores that display great volumes and varieties of merchandise to attract shoppers and promote sales. Once a plaintiff has proved that she slipped on a hazardous object on the floor, the defendant store owner is required to prove that its employees did not cause the hazard and that it exercised such a degree of care that it would have known of and either removed or warned of the hazard created by another shopper within a reasonable time under logical and conceivable circumstances. See McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987).
The shift in the burden from the shopper to the store owner relieves the shopper of her burden of showing the store owner's actual or constructive knowledge of the existence of the hazard. McCardie, supra, citing Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984). The clean-up and policing procedures in McCardie were more detailed than in defendant's store. Even should we assume defendant's clean-up and policing procedures were adequate, we must find, as McCardie did, that proof of adequate procedures is not proof that the floor hazard was not caused by one of the store's own employees.
The testimony of the manager of the ladies' clothing and cosmetic departments falls far short of proving that the hazard created by the clothes clip on the floor was not caused by an inattentive sales clerk. See and compare Ritchie v. S.S. Kresge Co., Inc., 505 So.2d 831 (La.App. 2d Cir. 1987), writ denied; Bonnette v. K-Mart, Inc., 502 So.2d 202 (La.App. 3d Cir.1987); Saucier v. Winn-Dixie Louisiana, Inc., 499 So.2d 1033 (La.App. 3d Cir.1986), and Brown v. Great Atlantic & Pacific Tea Co., Inc., 509 So.2d 557 (La.App. 3d Cir. 1987). The result in each slip and fall case in a large retail store depends on its own peculiar facts. The applicable principles of law, however, are set forth in McCardie and other cases of our highest court there cited.
Scott v. Hosp. Serv. Dist. No. 1, supra, does not avail defendant. There the plaintiff failed to see a "wet floor" sign and slipped on a wet hospital floor. The court held that
[The jury] could reasonably have concluded that [plaintiff] should have seen the warning sign, may have known the floor was wet, and could have avoided the wet area.
Nothing in this record indicates that plaintiff saw or should have seen, or should have been meticulously looking for, the small plastic clothes clip before she stepped on it. The trial judge properly granted JNOV on the assessment of fault.

QUANTUM
While the jury had no evidence of plaintiff's negligence, the jury heard evidence about the severity of plaintiff's pain. See Saucier, supra. On an appeal from a judgment based on a jury verdict in a damage action, we recognize the discretion afforded to a jury to assess damages and do not disturb the jury's assessment without articulating why and how that discretion was abused. Reck v. Stevens, 373 So.2d 498 (La.1979).
Where we find an abuse of discretion, we modify the damage award only to the lowest amount, or to the highest amount, as the case may be, that we find is within the range of the reasonable discretion. Coco v. Winston Industries, Inc., supra. A trial court exercising its JNOV power to modify a jury's damage award does not sit as an appellate court, but yet must give the jury benefit of every reasonable inference that can be made from the evidence. Hardin, supra, at p. 34.
It is medically certain in this record that this elderly plaintiff's pre-existing degenerative disc disease and osteo-arthritis predisposed her to permanent injury. The testimony of the medical experts was unequivocal as to causation. It is also medically certain that plaintiff sustained permanent *771 disability and pain from the fall. A tortfeasor takes his victim as he finds him and is responsible for all natural and probable consequences of his conduct. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Reasonable minds must conclude that the jury award of $4,500 general damages is abusively low.
We increased a $12,500 general damage award to $20,000 where a 59-year-old plaintiff with pre-existing degenerative disc disease suffered a cervical strain and aggravation in a vehicular collision. Bruce v. Williams, 516 So.2d 1183 (La.App. 2d Cir. 1987).[1]
The evidence in Bruce, supra, showed that his work and leisure activities were more significantly impaired than those of Ms. Zeagler. Both victims suffered permanent injury. In the Bruce circumstances we found the lowest range of the trier of fact's discretion was $20,000. Comparing the injuries and disabilities of the 59-year-old Bruce with those of the 65-year-old Ms. Zeagler, we find the lowest range would necessarily be less than $20,000 and certainly more than the $4,500 assessed by the jury. Because the jury saw and heard plaintiff and others testify about her pain and impairment, the jury could have "weighed" and inferred the degree or severity of her pain which is indisputably medically and legally found. We cannot speculate whether the trial court allowed the jury this inference. Considering both the jury's and the judge's assessment, we deem the lowest award within the jury's or the judge's discretion to be $12,000 rather than the $15,000 awarded by the trial court's JNOV. Coco, supra. We shall amend the JNOV accordingly.

COSTS
We do not disturb the JNOV assessment of all costs to the defendant. Even should we agree that the clerk of the trial court arbitrarily and improperly included some costs for which plaintiff was initially responsible, in the estimated cost defendant was required to pay to perfect this appeal, that issue becomes moot because, in this opinion, defendant is being cast for all costs here and below. The trial court is not shown to have abused its discretion in setting the fees of expert witnesses. Defendant is not precluded from instituting an adversary proceeding to determine what costs are properly chargeable by the trial court clerk. Meyers v. Basso, 398 So.2d 1026 (La.1981). Even where fault is apportioned equally, the trial court does not abuse its discretion in assessing all cost to one party. Ritchie, supra.

CONCLUSION
The JNOV is amended to award plaintiff $12,000 in general damages. We do not disturb the judgment insofar as it includes the $5,800 special damages. As amended, at the cost of appellants here and below, the JNOV is AFFIRMED.
SEXTON, J., concurs and assigns written reasons.
SEXTON, Judge, concurring.
While I have joined in this opinion, I write to express certain reservations. As I appreciate it, the basis for the trial court's JNOV, and the majority opinion here, is the rationale that since the jury found the defendant negligent, they must have believed the plaintiff's assertion that an accident occurred. If they believed an accident occurred, then under the extant circumstances a verdict of negligence on the part of the plaintiff is patently unreasonable. From a strictly legal standpoint, it is hard to disagree.
On the other hand, there certainly are suspicious circumstances attendant to this incident. Plaintiff said she was barely in the store when she fell. She said she was so embarrassed and flustered that she immediately fled the store without reporting it, yet, she had the presence of mind to pick up the allegedly offending clip. She did *772 not see her doctor or report the incident until some two weeks thereafter. On the other hand, the fact that her two doctors found injury is somewhat corroborating. It seems to me that if the jury had rejected the plaintiff's demands on this conflicting evidence we could not have said that they were clearly wrong.
The jury considered this evidence and found the plaintiff fifty percent at fault and the store only twenty percent at fault. (Without objection the trial court reduced the award by the negligence assigned to the plaintiff rather than the complementary value of the defendant's negligence.) Common sense tells me that this was clearly a compromise verdict.
Thus, this opinion seems to implicitly say that in "all or nothing cases" such as this one, juries may not render compromise verdicts. In other words, if a jury finds in any measure for the plaintiff, then they have found the fact of an accident. Therefore, an assessment of some degree of fault against the plaintiff and the reduction of damages because of doubt about the plaintiff's assertions is legally inappropriate. It seems to me the real question is whether such a holding squares with the JNOV standards of Scott v. Hospital District No. 1, 496 So.2d 270 (La.1986). Scott is a strong affirmance of the sanctity of jury decisions in civil cases and emphasizes that when there is a jury trial, the jury is the trier of fact.
In this respect, if the instant jury followed the trial court's instructions with respect to fault, it did find that an accident occurred. In which case, assessing any degree of negligence to the plaintiff is unreasonable on these facts. In this sense this opinion seems to follow Scott. On the other hand, common sense tells us that this was a compromise verdict caused because some members of the jury felt that the accident did not occur. On this record, such a view is within the "reasonable minds" standard of Scott. In this sense then, this opinion may be contrary to Scott.
The result here seems correct from a legal standpoint, but I believe that juries should be able to render compromise verdicts when such a verdict is reasonable. For these reasons, I am concerned about what we do here, but am not so convinced on the question as to dissent from the views of my learned brethren.
NOTES
[1] See also Hughes v. Querbes & Nelson, Inc., 460 So.2d 1161 (La.App. 2d Cir.1984), writ denied; Darbonne v. Safeco Ins. Co. of America, 452 So.2d 801 (La.App. 3d Cir.1984), Lacour v. Travelers Ins. Co., 502 So.2d 209 (La.App. 3d Cir. 1987); Holman v. Reliance Ins. Companies, 414 So.2d 1298 (La.App. 2d Cir.1982), writ denied; compare Bellard v. CNA Ins. Co., 503 So.2d 1104 (La.App. 3d Cir.1987), writ denied.