524 So.2d 42 (1988)
Pauline WILLIS, et al Ida Mae Farley, et al A.G. Jennings, Donald Jennings, Plaintiffs/Appellees,
v.
LOUISIANA POWER & LIGHT COMPANY, et al., Defendants/Appellants.
Nos. 19,479-CA to 19,482-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
Writ Denied May 20, 1988.
*43 Kenneth N. Simmons, James L. Davis, Many, for Pauline Willis and Ida Mae Farley.
Kelly & Salim by Donald G. Kelly, Natchitoches, for A.G. Jennings.
Watson, Murchison, Crews, Arthur & Corkern by Ronald Corkern, Jr., Natchitoches, for Donald Jennings.
William Ransom, III, Hanemann & Associates, New Orleans, for Morbark Ind., Inc.
Before HALL, C.J., and JASPER E. JONES and NORRIS, JJ.
HALL, Chief Judge.
This is a products liability action involving a wood chipping machine which came in contact with a high voltage electrical transmission line. Two persons were electrocuted in the incident, another received serious injuries from electrical shocks, and a fourth person sustained property damage. James H. Willis and Olen G. Farley died at the scene; A.G. Jennings was seriously injured and died approximately two years later.
The families of the decedents filed suit against Morbark Industries, Inc., the manufacturer of the wood chipping machine; Louisiana Power & Light Company, Middle South Services, Central Louisiana Electric Company and International Paper Company. Donald Jennings, the owner of the wood chipping machine, sued the same defendants alleging property damage and loss of income. The suits were consolidated for purposes of discovery and trial. Prior to trial, the plaintiffs settled with all defendants except Morbark and reserved their rights against Morbark.
Following a jury verdict in favor of Morbark, the trial judge granted plaintiffs' motion for a judgment notwithstanding the verdict and rendered judgment against Morbark in accordance with preliminary findings of the jury reflected on the jury verdict sheet. The trial court judgment awarded wrongful death damages of $600,000.00 each to the wives of the decedents, Pauline Willis, Ida Mae Farley and Ailene Jennings; and $50,000.00 each to the children of the decedents, Michael Farley, Janet Farley Long, Jimmy Sue Jennings McKee and Donald Jennings. The judgment also awarded $725,000.00 to Ailene Jennings, Jimmy Sue Jennings McKee and Donald Jennings for the survival action of A.G. Jennings. Property damages of $18,000.00 were awarded to Donald Jennings. The judgment declared Morbark 38% at fault; Louisiana Power & Light 37% at fault; and International Paper 25% at fault. Contributory negligence was assessed as follows: James H. Willis, 24%; Olen G. Farley, 10%; A.G. Jennings, 13% and Donald Jennings, 49%. The trial court judgment also provided for the granting of plaintiffs' motion for new trial in the event its ruling on the judgment notwithstanding the verdict was reversed.
Morbark appealed seeking a reversal of the judgment against it. Plaintiffs answered the appeal seeking to strike, or in the alternative to decrease, the percentages of contributory negligence assessed by the trial court. They also assert that International Paper was the statutory employer of James H. Willis, Olen G. Farley, A.G. Jennings *44 and Donald Jennings and thus was immune from tort liability and therefore the trial court erred in allocating a percentage of negligence to International Paper. They seek to have this percentage of negligence redistributed and reapportioned between Morbark and Louisiana Power & Light. They also claim that Morbark's appeal is frivolous and ask to be awarded damages and attorney's fees.
We reverse the judgment notwithstanding the verdict, affirm the grant of the new trial, and remand the case for a new trial.
The Facts
International Paper Company contracted with Bedsole Wood Corporation for the performance of wood chipping operations on timber property it owned in Red River Parish. The operation involved converting timber to chips by cutting trees and then feeding them into a wood chipping machine. The chips were collected in vans and then hauled to the International Paper plant. Bedsole subcontracted part of the work to Donald Jennings who owned a Model 22RXL "Chiparvestor" manufactured by Morbark Industries, Inc. It was equipped with a moveable boom and a grapple which was used to pick up the trees and feed them into the machine.
In late October, 1983 Donald Jennings's "Chiparvestor" was moved to a Louisiana Power & Light right of way on International Paper's property and positioned adjacent to an 138,000 volt electrical transmission line. Before wood chipping operations were begun at this location, Donald Jennings and one of his employees, James H. Willis, tested the boom of the machine to see if there was sufficient room to operate it without coming in contact with the electrical transmission line. They repositioned the machine twice before beginning operations.
On November 2, 1983, the fourth day after operations commenced on the right of way, the boom of the "Chiparvestor" came into contact with the electrical transmission line. Mr. Willis, the operator of the machine, was killed instantly when he attempted to exit the cab of the "Chiparvestor". Olen G. Farley, an employee or subcontractor of Donald Jennings who hauled the chips to the International Paper plant, was killed when he attempted to move his truck, the severed power line having come to rest on the van attached to his truck. A.G. Jennings, Donald Jennings's employee and father, also came into contact with the Farley truck after it was electrified. He was seriously injured, suffered many complications and died approximately two years later.
The Jury Verdict
After the trial, the jury began deliberations. At some point during the deliberations it was discovered that an issue of the local newspaper containing an article about the trial was present in the jury room. The paper was removed and deliberations continued. The jury eventually returned to the court a completed "Interrogatories to the Jury" form which had been used to tally votes taken during deliberations. The form showed that initially the jury found Morbark at fault by a vote of 9-3. This vote and a later vote of 8-4 were crossed out. In its final vote, the jury found Morbark not at fault by a vote of 10-2. The court instructed the jury to return to the jury room to complete deliberations, and to record the results on a "replacement" form which was a duplicate of the first page of the two-page form originally given to the jury. The jury thereafter returned to the court the completed "replacement" form in which it found no fault on the part of Morbark. Plaintiffs then filed a motion for judgment notwithstanding the verdict and, alternatively, for a new trial. The trial court granted the judgment notwithstanding the verdict and, conditionally, a new trial.
The JNOV
In granting the judgment notwithstanding the verdict, the trial judge reasoned that the original 9-3 jury vote, finding fault on the part of Morbark, constituted a verdict. The court explained that the JNOV merely confirmed the decision of the jury as it initially rendered its verdict and stated, "When nine jurors were in agreement on that issue of the case, that ended the deliberations on that issue and that *45 resulted in a verdict in favor of liability on behalf of Morbark." The trial judge found that the percentages of responsibility and the amount of damages fixed by the jury were within the discretion afforded the finder of fact and adopted those findings.
Morbark contends that the trial court erred in basing the judgment notwithstanding the verdict on its determination that the initial 9-3 jury vote finding Morbark at fault was a verdict. Morbark argues that the preliminary vote by the jury did not constitute a verdict and that no verdict was rendered until the jury returned the verdict form to the trial judge reflecting a verdict in its favor. Morbark maintains that the trial court did not apply the proper standard for granting a judgment notwithstanding the verdict in that it did not analyze the evidence. Morbark further contends that even if the trial court had applied the proper standard, the evidence clearly shows that Morbark was not liable to the plaintiffs.
Plaintiffs, on the other hand, contend that the 9-3 vote finding Morbark at fault was the jury's original verdict but that the jury foreman failed to return the verdict form to the courtroom as instructed by the trial court and instead encouraged deliberations to continue. Alternatively, plaintiffs contend that the "final judgment" of the jury finding Morbark not at fault was clearly contrary to the law and evidence. They contend that the "Chiparvestor" was defectively manufactured because it was not equipped with either of two safety devices, an insulated boom cage or a proximity warning device, which plaintiffs contend would have prevented the accident, and because Morbark failed to advise purchasers of the availability of these safety devices and failed to place warnings regarding the dangers of coming into contact with electrical lines on the machines or in the operator's manual.
Defendant contends that there is substantial evidence indicating that the safety devices cited by plaintiffs are not reliable, that they can create a "trap" if utilized, and that Donald Jennings and his employees were fully aware of the dangers presented if contact with the electrical line occurred. Defendant argues that there is no duty under the law to warn of dangers which are known and obvious.
The questions presented are whether the trial court applied the proper standard for granting a judgment notwithstanding the verdict and whether, under that standard, the jury's finding that Morbark was not at fault was so unreasonable that a judgment notwithstanding the verdict was warranted. Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988).
The trial court was wrong in determining that the preliminary vote of the jury reflected on the verdict form constituted the verdict of the jury. Jury deliberations are not complete until the jury returns its verdict to the trial judge. Even then, the judge can under certain circumstances order the jury to continue deliberations, as the court did in this case. The jury verdict is rendered only after it is returned to the court and accepted by the court. See LSA-C.C.P. Arts. 1812 and 1813. In this case, the verdict returned by the jury and accepted by the court reflected a final vote of 10-2 in favor of Morbark on the issue of whether it was at fault.
The trial court also erred in granting a judgment notwithstanding the verdict because it did not apply the jurisprudential standard for granting a JNOV.
The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. Art. 1811.[1] This article *46 does not, however, specify the grounds on which a trial judge may set aside a jury verdict. Therefore, in determining the standard for granting a judgment notwithstanding the verdict, reference must be made to the source provision of the Louisiana rule, Federal Rule of Civil Procedure 50(b), (c) and (d), and the jurisprudence interpreting this provision. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986).
In Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969), the court discussed FRCP 50 and explained that if there is substantial evidence supporting the jury verdict which is of such quality and weight that reasonable men might differ as to the correct result, then a motion for judgment notwithstanding the verdict should be denied and the jury verdict allowed to stand. If, on the other hand, the facts and inferences are so overwhelmingly in favor of the party requesting the judgment notwithstanding the verdict that reasonable men could not differ, the motion should be granted. In making its determination, the trial court should consider the evidence in the light most favorable to the party in whose favor the jury verdict was rendered; giving to this party the benefit of every legitimate and reasonable inference that can be drawn from the evidence. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir. 1987).
The Boeing standard clearly requires the trial court to weigh the evidence and make its own determination on the proper outcome of a case. Merely adopting a preliminary jury vote is not a sufficient basis for granting a JNOV. An independent analysis of the evidence by the trial court, as set out in the cited cases, is required before a JNOV is properly granted. The trial court made no such analysis and no finding under the jurisprudential standard.
Furthermore, our review of the record indicates that reasonable minds could have differed as to the liability of Morbark and therefore there was no basis for overturning the jury verdict in its favor. The jury could have fairly concluded from all the evidence, though disputed, that the "Chiparvestor" was not defective for lack of safety devices, the reliability and availability of which were contested, or for lack of notice to purchasers of the availability of these devices. Also, the jury could have found that Morbark had no duty to *47 warn of the obvious danger of working under electrical lines or that the accident would have happened even if such warnings were present. In short, the jury could have reasonably found that the accident was caused because the "Chiparvestor" was placed too close to the electrical transmission line. Applying the Boeing standard and considering all the evidence in the record in the light most favorable to Morbark, we hold that the trial court improperly granted the motion for JNOV.
The Motion for a New Trial
Foreseeing the possibility that the JNOV might be reversed on appeal, the trial judge conditionally granted plaintiffs' motion for a new trial. He based his ruling on LSA-C.C.P. Art. 1973 which provides:
"A new trial may be granted in any case if there is good ground therefore, except as otherwise provided by law."
The good grounds cited by the trial judge in support of his ruling were the confusion of the jury as to the liability issue brought on by the complexity of the case and evidenced by the jury's request for further instructions on the liability issue, the unique "tally sheet" verdict form returned to the court, and the likelihood that members of the jury were influenced by the article in the local newspaper which was present in the jury room.
A proper application of article 1973 necessitates an examination of the facts and circumstances of the individual case. A new trial may be ordered by the district judge in his sound discretion and in the interest of justice. Southern Natural Gas Co. v. Roland, 240 La. 471, 123 So.2d 891 (1960). Where the granting of a motion for new trial is based on Article 1973 rather than on one of the peremptory grounds listed in Article 1972,[2] the trial court should not be reversed unless an abuse of discretion is shown. Eddy v. Topper, 431 So.2d 840 (La.App. 2d Cir.1983).
An examination of the record convinces us that no abuse of discretion has been shown. While it is possible that none of the three reasons cited by the trial judge for granting the motion for new trial would, alone, constitute a sufficient basis for granting a new trial, we cannot say that the trial judge erred in concluding that the total concurrent effect of these events warranted a new trial under Article 1973.
The expert testimony presented at the trial was lengthy and complex. A major portion of Morbark's defense was an attempt to lay the blame for the accident on two defendants, Louisiana Power & Light and International Paper, who had settled with the plaintiffs before trial. The trial judge's written opinion noted that this situation magnified the confusion of the jury in that evidence regarding these entities was introduced but the role played by them was not fully explained to the jury. Further evidence of jury confusion, cited by the trial judge, was that there were discrepancies between the jury's answers to some of the interrogatories submitted to them and the initial poll of the jury. The trial judge was of the opinion that the jury was confused as to the interrogatories and the effect thereof. Based on our review of the proceedings, we can not say that the trial judge's appreciation of the situation was wrong. Additionally, although the presence of a newspaper in the jury room is not "jury misconduct" of such a grievous nature as to preclude the impartial administration of justice and require a mandatory new trial under Article 1972, the possibility that the decision making process was tainted by an outside influence should not be overlooked as insignificant. All circumstances considered, it was reasonable for the trial court to conclude that the function of the jury as trier of fact had not been *48 fairly and impartially performed. We find that there was sufficient reason for the trial court to order a new trial. In so finding we do not presume to decide the merits of the case or to imply any agreement or disagreement with the verdict of the jury.
Decree
For the reasons assigned the judgment of the district court granting the judgment notwithstanding the verdict is reversed, the judgment granting a new trial is affirmed, and the case is remanded for a new trial. The costs of this appeal are assessed to plaintiffs-appellees.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR A NEW TRIAL.
NOTES
[1] Art. 1811. Motion for judgment notwithstanding the verdict.

A. (1) Not later than seven days, exclusive of legal holidays, after the signing of the judgment or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the signing of the judgment notwithstanding the verdict or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice. The motion shall be served pursuant to Articles 1976 and 1314.
E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.
[2] Art. 1972 Peremptory grounds.

A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.