LANDRIEU, Judge.
In this product liability claim, we are asked to review certain procedures in the jury trial. Finding no reversible error in the proceedings, we affirm the judgment rendered by the trial court.
FACTS:
On the late afternoon of April 22, 1989, Merlin Duret and thirteen companions left New Orleans on their way to an outing on the Mississippi Gulf Coast. In addition to Duret, three passengers occupied the cab of his 1988 Ford Ranger pick-up and ten other passengers were seated on the flatbed of the light truck. Testimony indicated that Duret had consumed alcoholic beverages during the trip[1] and was driving at seventy-five to eighty miles per hour. After taking a wrong turn on the interstate, the vehicle left the 1-59 roadway in St. Tammany Parish and overturned in the median. One of the passengers was killed in the accident, and Duret and others sustained serious injuries.
Duret alleged that he lost control of the vehicle when a tread separation, caused by a manufacturing or design defect,[2] occurred on the right rear tire of the truck. Having damaged the truck’s original right front tire approximately two months earlier, Duret had purchased the tire which failed from the D.H. Holmes Car Care Center at the Lake Forest Shopping Center. The car care center was operated by the Goodyear Tire & Rubber Company pursuant to a License Agreement executed in 1986 by Holmes and Goodyear. The replacement tire was a used Uniroyal Tiger Paw, a passenger tire manufactured in 1983.
Testimony of an accident reconstruction expert, however, indicated that a trailing edge separation of the tire tread,[3] which he concluded occurred in this case, does not change the dynamics of the vehicle. According to further testimony of the expert, even after the tread had separated from the tire, the tire remained inflated and this vehicle continued to travel straight for several seconds before veering off the roadway. Therefore, the vehicle’s high rate of speed and the driver’s alleged alcohol impairment were suggested as significant factors in Duret’s inability to control the vehicle after the tire failure. The jury also heard that the crowded conditions in the cab of the truck and the overloading on the rear axle affected the driver’s ability to steer the vehicle. Furthermore, Uniroyal contended that any defect in the tire resulted from its misuse and abuse by Duret, well after it was manufactured and beyond the manufacturer’s control.
PROCEDURE:
As a result of the accident and consequent injuries, five separate lawsuits were filed. In each lawsuit, Uniroyal Goodrich Tire Company was named a defendant on the basis of product liability theories, including claims of defective design and manufacture. Other defendants included Du-ret, D.H. Holmes Company and its successor in interest, Dillard Department Stores, and various insurance companies. After *507 opening arguments, Holmes (Dillard) was dismissed from the lawsuit on its motion for a directed verdict.
After the presentation of all admissible evidence and the closing argument of counsel, the judge gave the jury detailed instructions. As part of those instructions, she noted,
Louisiana law requires that nine of you agree in order to render a verdict for either side. When nine of you are of the same opinion about the verdict, that ends your deliberations and that opinion becomes your verdict.
Jury deliberations began on the afternoon of July 28, 1991, some two months after the trial began. Shortly thereafter, the jurors requested instruction on the definition of “proximate cause in No. 3(B),” the jury interrogatory which addressed Duret’s liability for the accident; they were recharged by the court. (Tr. vol. 24, p. 44.) After the jury had resumed deliberations, the bailiff delivered to the trial judge a set of jury interrogatories, dated and signed by the foreman. By votes of eleven to one, the jury had answered that the tire involved in the accident was not unreasonably dangerous either in construction or composition or in design. While concluding that Duret was negligent in causing the accident, the jurors decided by a margin of nine to three that his negligence was not a proximate cause of the accident.
Through the bailiff, the judge returned these interrogatories to the jury with the instruction that they were “to write on a sheet of paper that they ha[d] reached their verdict.” Instead, the jury sent to the judge a note indicating “[w]e don’t fully comprehend the Questions 1, 2, and 3.”[4] (Tr. vol. 24, p. 49.) Reasoning that the jury did not understand that their answers to the interrogatories constituted their verdict, the judge decided to recall and to poll the jury. She expressed her belief that, in fact, the jury failed to understand the ramifications of their answers rather than the questions. (Tr. vol. 24, p. 50-51.) After the argument of counsel, the judge agreed to send a note to the jury asking them to “[b]e specific as to what it is you don’t understand” rather than to question them in open court. (Tr. vol. 24, p. 58.) When the jury did not respond to the judge’s note in more than an hour,[5] the judge decided to recall them for further instructions in accordance with the Code of Civil Procedure.
At the judge’s request, the foreman of the jury returned the interrogatories sent to the court approximately an hour earlier. The judge noted that neither the answers nor the signature had been changed, but that there were pencil markings in the margins. (Tr. vol. 24, p. 69.) According to the foreman, there was no other set of interrogatories prepared by the jury as a whole. (Tr. vol. 24, p. 72.) After verifying that the *508 answers to the interrogatories were exactly what had been given originally to the bailiff and that confusion as to the meaning of Questions 1, 2, and 3 was only expressed after the bailiff had requested the verdict on a separate piece of paper, the judge received the interrogatories as the jury’s verdict. (Tr. vol. 24, p. 75.) Plaintiffs’ counsel then asked that the jury be polled, and the trial judge complied. (Tr. vol. 24, p. 78.) After the first poll, the vote did not accord with the verdict form. The jurors were then re-polled and a vote of nine to three, coinciding with their vote which determined that Duret’s negligence was not the cause of the accident, was verified. Accordingly, the trial judge granted the defendant’s motion to render judgment in accordance with the jury verdict, that is, “in favor of the defendants, Uniroyal Goodrich Inc. et al and against the plaintiff Donna Diaz, et al, dismissing plaintiff’s action with prejudice at plaintiff cost.”
DISCUSSION:
Procedure in Jury Trials:
According to La.Code Civ.Proc.Ann. art. 1797 (West 1990), in a trial by a jury of twelve members, nine of the jurors must concur to render a verdict. Although a preliminary vote of the jury does not constitute its verdict, deliberations are complete when that vote is returned to the trial judge. Willis v. Louisiana Power & Light Co., 524 So.2d 42, 45 (La.App. 2d Cir.), writ denied 525 So.2d 1059 (La.1988). Furthermore, a final adjudication is just that, and, thereafter, any second thoughts of the jurors will not be entertained. State v. Velez, 588 So.2d 116, 139 (La.App. 3d Cir.1991), writs denied 592 So.2d 408 (La.1992), cert. denied — U.S.-, 112 S.Ct. 3031, 120 L.Ed.2d 901 (1992). Nor does the law permit any inquiry into the method or thought processes whereby the jury reached its verdict, except for polling and in the event that any outside influence was improperly brought to bear. La.Code Evid. Ann. art. 601 (West Supp.1993). In fact, courts have acknowledged that “[cjonfusion of the jury is one of the hazards one must foresee when trying a case to a jury_” Nailor v. International Harvestor Co., 430 So.2d 784, 791 (La.App. 5th Cir.), writ denied 437 So.2d 1148 (La.1983).
In this case, nine jurors had agreed on each relevant issue before them. Since that agreement was evidenced in a writing, which was signed and dated by the jury foreman and delivered to the trial judge, it cannot be deemed merely a preliminary vote. Therefore, in accordance with the court’s instructions, that agreement became their verdict and ended further deliberations. Any subsequent action by the court could not improperly interrupt deliberations that were already complete, and any second thoughts of the jurors in this matter could not be entertained by the court.
We likewise conclude that the plaintiffs’ assignment of error about the jurors’ confusion over their interrogatories is without merit. Confusion is a hazard of trial by jury. However, the interrogatories at issue are properly framed, in plain language. They correspond to the proposals by the plaintiffs and were not objected to by either plaintiffs or defendants. Furthermore, the confusion, as expressed by the jury, relates primarily to the judge’s request that they prepare a verdict apart from the signed interrogatories. It apparently did not affect their response to the interrogatories themselves.
Although the plaintiffs also assigned as error in brief the court’s failure to admit into evidence certain Uniroyal/Goodrich committee minutes, that issue was withdrawn from consideration in oral argument. Accordingly, it has not been considered.
No doubt, errors were committed by the trial judge and some confusion relating to the jury deliberations did exist. Nevertheless, we find that the procedure, taken as a whole, permitted the jury to arrive at a just verdict. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.

. In fact, a blood sample, taken at the North-shore Regional Medical Center approximately one hour after the accident, showed a level of 125 milligrams of alcohol per deciliter, or 0.12%. According to expert testimony, Duret’s motor and sensory capabilities would have been impaired by this level of alcohol in the bloodstream. The expert stated, in fact, that an individual with a blood alcohol level above a 0.05% has difficulty in recognizing trouble and taking timely and proper evasive moves in an emergency situation.

. Although the plaintiffs suggested that the tread separation resulted from a manufacturing or design defect, another possible cause was the existence of a cut through the tread of this five year old tire which allowed moisture to penetrate to the top steel belt. Such moisture could lead to rust and corrosion and eventually a separation of the tread from the belt in the area of the cut.

.The expert explained that a trailing edge separation occurs behind the direction of travel of the tire. Therefore, the tread just slaps down on the pavement until it comes off and does not create any movement of the vehicle’s suspension system. In contrast, a leading edge separation starts in the front, separating in the direction opposite from the rotation of the tire. A portion of the loosened tread can thereby fold underneath the tire and cause the tire to bounce.

. The jury interrogatories at issue were written as follows:
"1. (A) Was the tire involved in the accident unreasonably dangerous in construction or composition at the time the tire left the manufacturer’s control?
YES_NO_
(If you answered yes to question 1(A), go on to question 1(B). If you answered No to question 1A, answer question 2(A).)
(B) Was this condition a proximate cause of the accident?
YES NO_
"2. (A) Was the tire involved in this accident unreasonably dangerous in design at the time it left the manufacturer’s control.
YES_NO_
(If you answered "yes” to question 2(A), answer question 2(B). If you answered "No” to question 2(A) answer question 3)
(B) Was the condition a proximate cause of the accident?
YES_NO_
“3. (A) Was Merlin Duret negligent in causing the accident?
YES_NO_
(If your answer to question 3(A) is "yes”, answer 3(B) If your answer to question 3(A) is “NO” answer question 4.)
(B) Was his negligence a proximate cause of the accident?
YES_NO_”

. After the jury was excused, the judge retrieved from the jury foreman their written response to the judge’s note. It read, "Your honor, we don’t know, please explain, again, the choices and consequences involved in answering Questions 1, 2, and 3, and how to interpret the resulting verbage [sic] responses as verdicts, such as " ‘Blank’ is negligent and responsible.” (Tr. vol. 24, p. 86.)