496 So.2d 270 (1986)
Maudie Scott, wife of/and Curtis E. SCOTT
v.
HOSPITAL SERVICE DISTRICT NO. 1 OF the PARISH OF ST. CHARLES, et al.
No. 86-C-0713.
Supreme Court of Louisiana.
October 20, 1986.
Peter Dazzio, Watson, Blanche, Wilson & Posner, Baton Rouge, for applicant.
Lawrence Wiedemann and C. Scott Carter, Wiedemann & Fransen, New Orleans, for respondents.
WATSON, Justice.
In this personal injury suit, Maudie Scott and her husband, Curtis E. Scott, seek damages for a slip and fall which occurred on October 27, 1982, at the St. Charles Parish Hospital in Luling, Louisiana.[1]
A jury assessed damages at $380,000; granting lump sums of $330,000 to Maudie Scott and $50,000 to her husband. Since Ms. Scott was found sixty percent at fault and the hospital forty percent, her award was reduced to $132,000 and her husband's to $20,000 for a total of $152,000.
The trial court granted plaintiffs' motion for judgment notwithstanding the verdict on both liability and quantum, increasing the fault of the hospital to one hundred *271 percent, and the total award to $500,000.[2] The court of appeal affirmed,[3] and a writ was granted to review the judgment.[4]

ISSUE
Did the trial court err in granting the motion for judgment notwithstanding the verdict (JNOV), thereby holding that reasonable persons could not reach different conclusions on the evidence?

FACTS
Maudie Scott had gone to the St. Charles Parish Hospital in Luling to attend her daughter, Judy Lanson, who was to have back surgery at 7:00 A.M. on October 27, 1982. After surgery, Ms. Lanson was wheeled back to Room 220 under anesthesia. Ms. Scott was asked to inform the nurses when Ms. Lanson awoke, because she had to be turned to prevent pneumonia. At approximately 10:45 A.M., Ms. Lanson began to awaken, and Ms. Scott proceeded to the nurse's station wearing slippers.
According to Ms. Scott, she was in no hurry. She had been up and down the hall several times that morning and had spent the previous night at the hospital. There was a bed, chairs, a nightstand, a cleaning cart and a man with a buffing machine in the hall by the left wall which made it necessary for her to walk on the far right side of the hall. As she passed Room 225, she slipped on some sort of liquid and fell to her left knee. She had not noticed any warning signs or observed anything on the floor before she fell. She got up and limped to the nurse's station with her slacks wet from the left knee down. At the nurse's station, she reported the incident to nurse Celia Holmes, saying she had slipped in water. Nurse Holmes took her in a wheelchair to the area where she had fallen. Ms. Scott was then taken to the emergency room where x-rays were taken of her left knee and foot; her knee was wrapped in a bandage; and medication was prescribed for any swelling.
Nurse Holmes testified that Ms. Scott was not limping when she approached the nurse's station where Holmes was acting as charge (supervising) nurse on October 27, 1982. When Ms. Scott approached and told Holmes she had slipped in the hall, she added that she knew the floor was wet. Nurse Holmes did not know if Ms. Scott meant she knew the floor was wet before she fell or after. Ms. Scott related that she had stepped over wires or cords from the equipment being used. When Nurse Holmes took Ms. Scott back to the area, half of the hallway was empty leaving sufficient room for a person to walk. The furniture from Room 225 was at the end of the hall and should not have impeded Ms. Scott's passage. In front of Room 225 there was a red "Wet Floor" sign with yellow lettering two and a half feet high. Nurse Holmes spoke to two maintenance men who were stripping the floor of Room 225 and then took Ms. Scott to the emergency room and filled out a report. According to the nurse's testimony, when the floor of a room is stripped, a small portion (about twenty-four inches) of the hall is also stripped. This portion of the hall in front of Room 225 was behind the warning sign.
Johnny Pierre, one of the maintenance men stripping the floor of Room 225, testified that the furniture from the room was placed at the end of the hall and that there was sufficient room to walk down the hall. He had applied a commercial stripping compound mixed with water to the floor with a mop and had placed his cleaning cart on the opposite side of the hall from Room 225. As he turned to get a buffing machine, which was against the wall, he noticed Ms. Scott on the floor. Pierre testified that a *272 "Wet Floor" sign was placed at the entrance to Room 225. Pierre said his co worker was in Room 224 at the time of the accident preparing to remove the furniture from that room. However, co-worker Warren Bourgeois testified that he was in the hall when Ms. Scott fell. He did not see her fall but turned and saw her on the floor in front of Room 225, where there was a warning sign. In deposition, he had said the furniture from that room was across the hall but testified at trial it was at the end of the hall. Both men testified that the commercial stripper was very slippery.
The jury had the benefit of listening to all the testimony concerning the appearance and condition of the hallway at the time of the fall. They also visited the scene of the accident and were shown various pieces of furniture in the hallway so that they could judge the effect this would have on a person's passage.
As a result of the fall, Ms. Scott developed chondromalacia of the patella, a condition where the smooth cartilage of the knee becomes rough, interfering with the smooth operation of the knee and its flexing ability. An operation was performed to alleviate the problem. As a complication, Ms. Scott developed thrombophlebitis, a painful vascular condition where life-threatening blood clots form in the extremities.
Dr. Gessner, the treating orthopaedist, testified that Ms. Scott is 100% functionally disabled until a regimen of aggressive therapy can be continued. Therapy is complicated by recurring bouts of phlebitis. Absent therapy, Ms. Scott will not improve; she is unable to climb stairs and ambulates with a walker. Due to her physical condition, the possibility of future employment is uncertain.
There was testimony from a variety of other experts: orthopaedic and cardiovascular surgeons, a specialist in internal medicine, a clinical psychologist, a psychiatrist, and an economist.
Several items of damages were seriously disputed between plaintiff and defendant, including the amount of future medical costs and loss of future wages. The Scotts asserted a need for future medical costs based on the fact that Ms. Scott continued to suffer vascular and orthopaedic problems, as well as a continued need for psychiatric care. The hospital asserted that there was little evidence supporting this claim and pointed to the physical problems Ms. Scott suffered prior to her fall.
The testimony showed that Ms. Scott had a short record of past employment. After raising nine children, three of her own, and six of her husband's from a prior marriage, she had worked at a Dollar General Store. She had also worked for the St. Charles Parish Sheriff's Office for six months in 1980 and had been employed from September, 1980 until December, 1981, as the manager of an apartment complex. She had to leave the manager's job due to hepatitis and found the position filled when she recovered. She was not employed at the time of the accident and had not applied for a job since 1981.
The jury found Ms. Scott to be sixty percent at fault and the hospital forty percent at fault. Damages for her and her husband were fixed at $380,000 and reduced by sixty percent.
The trial court granted plaintiffs' motions for JNOV and increased the hospital's liability from forty percent to one hundred percent. The damages were increased from $380,000 to $500,000, the latter award being itemized as follows:

"MAUDIE SCOTT
Past Medical Expenses $ 45,000.00
Past Lost Wages 20,000.00
Future Lost Earning Capacity 100,000.00
Future Medical and
 Psychiatric Expenses 85,000.00
General Damages 200,000.00
 ___________
 $450,000.00
CURTIS E. SCOTT
Loss of Consortium, Service
 and Society 50,000.00
 ____________
TOTAL $500,000.00"

(Judgment, May 29, 1985, Tr. 324)
The court of appeal affirmed. We reverse.

*273 LAW
When there is a jury, the jury is the trier of fact. LSA-C.C.P. art. 1736.[5]
The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. art. 1811.[6] The article does not specify the grounds on which the trial judge may set aside a jury verdict. The Official Revision Comments state that "... a judgment N.O.V. is based on a different standard [from additur and remittitur] namely, that based on the evidence there is no genuine issue of fact. Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages [or as to liability], it should have the authority to grant the appropriate judgment notwithstanding the verdict."
Because this article was based on a federal rule, the decisions of the federal courts can be used for guidance. Madison v. Travelers Insurance Company, 308 So.2d 784 (La., 1975); State v. Bradford, 367 So.2d 745 (La., 1978); Parish National Bank v. Lane, 397 So.2d 1282 (La., 1981).
Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), decided by an en banc court, set out the criteria to be followed on motions for directed verdict and motions for judgment notwithstanding the verdict in the federal courts. When "the facts and inferences point so strongly and overwhelmingly *274 in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied ..." 411 F.2d at 374. Also see Backer v. Coursey, 472 F.2d 887, 888 (5th Cir.1973); Melancon v. Western Auto Supply Co., 628 F.2d 395, 397 (5th Cir.1980); and Dalton v. Toyota Motor Sales, Inc., 703 F.2d 137, 140 (5th Cir.1983).
Various Louisiana courts of appeal have treated the subject of judgment notwithstanding the verdict. Robertson v. Penn, 472 So.2d 927 (La.App. 1 Cir.1985) applied the correct standard for judgment N.O.V. which requires that the motion be granted "... only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover."[7] A judgment N.O.V. was affirmed in Blum v. New Orleans Public Service, Inc., 469 So.2d 1117 (La.App. 4 Cir., 1985) where "[t]he facts and inferences from the evidence strongly and overwhelmingly point to a conclusion...."[8] Also see Roberts v. St. Bernard Parish School Board, 427 So.2d 676 (La.App. 4 Cir., 1983) where the motion should not have been granted and Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La.App. 5 Cir., 1984) in which the court concluded "... neither party enjoyed a strong or overwhelming position as to the facts which would justify the granting of such motion."[9]
In Breithaupt v. Sellers, 390 So.2d 870 (La., 1980), a "motion for directed verdict would have been appropriate only if reasonable men could not have disagreed on the issue of plaintiff's contributory negligence. Whether this plaintiff's conduct contributed to his injury is a factual issue that should have been presented to the jury."[10]

CONCLUSION
The motion for judgment notwithstanding the verdict was granted here on both liability and quantum.
As to liability, reasonable persons could certainly differ on the question of Ms. Scott's contributory negligence. A jury of twelve persons found her to be sixty percent at fault and could reasonably have concluded that she should have seen the warning sign, may have known the floor was wet, and could have avoided the wet area. The trial court erred in granting a judgment notwithstanding the verdict and the judgment of the jury as to liability is reinstated.
The trial court also erred in granting a judgment notwithstanding the verdict on the quantum issue. The trier of fact, here the jury, is given much discretion in fixing the measure of damages. LSA-C.C. art. 1999 [formerly LSA-C.C. art. 1934(3)].[11]
The assessment of Maudie Scott's damages at $330,000 was not such an abuse of discretion as would necessitate a judgment notwithstanding the verdict. The trial judge gave her $450,000, including past lost wages of $20,000 and future lost earning capacity of $100,000, despite the fact that, because of prior health problems, Ms. Scott had not worked for at least a year prior to the accident. Likewise, he awarded $85,000 for future medical, the testimony concerning which was far from *275 precise and explicit. The jury apparently appraised the evidence concerning past and future loss of wages, the future medical, and possibly even general damages differently from the judge. The evidence is capable of different interpretations; it cannot be said that reasonable persons could not differ. The jury's verdict must stand. The trial judge clearly erred in granting a judgment notwithstanding the verdict. The jury award of $380,000 in damages, $330,000 to Ms. Scott and $50,000 to her husband subject to the reduction for Ms. Scott's liability, is reinstated.
For the foregoing reasons, the judgment of the court of appeal is reversed. The judgment of the trial court granting a judgment notwithstanding the verdict is reversed,[12] and the jury determinations as to liability and quantum are reinstated.
REVERSED: JURY VERDICT REINSTATED.[13]
NOTES
[1] Defendants are Hospital Services District No. 1, Parish of St. Charles, State of Louisiana; its insurer, Southern American Insurance Company (SAIC); and its excess insurer, Mead Reinsurance Corporation.
[2] The judgment was amended to reflect that Mead was the excess insurer, liable for payment only when the policy limits of SAIC's policy were exhausted.
[3] Scott v. Hosp. Service Dist. No. 1, 484 So.2d 168 (La.App. 5 Cir.1986).
[4] 488 So.2d 1013 (La., 1986).
[5] LSA-C.C.P. art. 1736 provides:

"The trial of all issues for which a jury trial has been requested shall be by jury, unless the parties stipulate that the jury trial shall be as to certain issues only or unless the right to trial by jury as to certain issues does not exist; however, except as otherwise provided under the provisions of Article 1562, there shall be but one trial."
[6] LSA-C.C.P. art. 1811 provides:

"A. (1) Not later than seven days, exclusive of legal holidays, after the signing of the judgment or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
"(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
"B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
"C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
"(2) If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
"(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
"D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the signing of the judgment notwithstanding the verdict or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice. The motion shall be served pursuant to Articles 1976 and 1314.
"E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in this Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.
"F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues."
This is an amendment of the original enactment of this rule as LSA-C.C.P. art. 1810.1 which was modeled after the Federal Rules of Civil Procedure, Rule 50(b), (c) and (d).
[7] Robertson, supra, 472 So.2d at 929.
[8] Blum, supra, 469 So.2d at 1120.
[9] Courtney, 447 So.2d at 507.
[10] Breithaupt, supra, 390 So.2d at 874.
[11] A determination of the measure of damages will not be disturbed on appeal unless the trier of fact abused its much discretion in making the award, Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La., 1981); Perniciaro v. Brinch, 384 So.2d 392 (La., 1980); Reck v. Stevens, 373 So.2d 498 (La., 1979), and then "only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court." Coco v. Winston Industries, Inc., 341 So.2d 332 at 335 (La., 1976).
[12] Except as to limiting the liability of Mead Reinsurance Corporation, the excess insurer of Hospital Service District No. 1 of the Parish of St. Charles, to its policy limits.
[13] "IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of plaintiff, Maudie Scott, and against defendants, Hospital Service District No. 1 of the Parish of St. Charles, State of Louisiana, Southern American Insurance Company, and Mead Reinsurance Corporation, jointly and in solido, in the full and true sum of One Hundred Thirty-Two Thousand and No/100 ($132,000.00) Dollars, and in favor of plaintiff, Curtis E. Scott, and against defendants, Hospital Service District No. 1 of the Parish of St. Charles, State of Louisiana, Southern American Insurance Company, and Mead Reinsurance Corporation, jointly and in solido, in the full and true sum of Twenty Thousand and No/100 ($20,000.00) Dollars, both together with legal interest thereon from date of judicial demand and all costs of these proceedings. * * *" (Judgment, May 8, 1985, Tr. 313)