LABORDE, Judge.
Plaintiff, Department of Transportation and Development (DOTD), appeals the trial court’s judgment notwithstanding the verdict (JNOV) granted on motion of defendant Todd’s C Stores, Inc. We reverse and reinstate the jury’s verdict, finding that the trial court erred in granting JNOV in favor of defendant.
FACTS
Defendants, Paul Sanders, et al, own a small strip shopping center on Keyser Avenue in the city of Natchitoches. On December 3, 1986 they leased part of the shopping center to Todd’s C Stores, Inc. Following the lapse of the initial term of the lease on September 30, 1988, the lessee renewed the lease for five years to September 30, 1993, with the option to renew for an additional five years.
On April 10, 1990 the State of Louisiana, Department of Transportation & Development filed suit to expropriate an approximate fifteen foot strip along the perimeter of the shopping center, including some of the leased premises. The owner and lessee of the property were named defendants in the lawsuit, and the state deposited $44,064.00 in the registry of the court. On June 13, 1991, this deposit was withdrawn by joint motion of the defendants; the owner of the property received $29,274.00 for the entirety of the expropriated perimeter, with the remainder of *1209 $14,790.00 going to Todd’s C Stores, Inc. for that portion of the perimeter occupied by the gas pumps and underground storage tanks of his convenience store.
Alleging they were deserving of more relief than the sums tendered, the lessee and owner of the condemned property contested the state’s offer. The cases came to trial on May 18-19, 1992. The demands against lessee Todd’s C Stores, Inc. and owners Paul Sanders, et al. were tried separately. The demand against Paul Sanders, et al., the owners/lessors herein, was tried before the judge, who awarded them $93,000.00, less a credit for the $29,274.00 which they had previously withdrawn from the State’s deposit. This finding was reduced to judgment and is not before us.
The demands against Todd’s C Stores, Inc., lessee herein, were tried to the jury. Todd’s presented evidence that its portion of the fifteen foot wide strip expropriated by the State included the pump island for its convenience store; because there was no place on the remaining leased premises to which the pump island could be removed and still allow vehicular access to the store itself, it maintained the operation of the convenience store was ruined. Todd’s experts testified that the damages totalled $108,935.00, including lost profits for the additional five year option period, for a total of seven years.
The jury awarded Todd’s the sum of $48,-177.50 less a credit for the $14,790.00 Todd’s had already withdrawn from the original deposit. After a hearing on the question, the trial judge granted a JNOY in favor of Todd’s C Stores Inc., setting aside the jury’s verdict and increasing the award to Todd’s C Stores, Inc. to $108,935.00, less the $14,-790.00 previously withdrawn. From this judgment, the state appeals.
ASSIGNMENT OF ERROR NUMBER ONE
In its first assignment, plaintiff DOTD asserts that the trial judge erred in granting a JNOV in favor of lessee because the jury’s damage award was supported by the record.
When determining whether a claimant is entitled to eminent domain compensation, the court must determine if a person’s legal right with respect to a thing or an object has been affected. If it is determined that property is involved, the court must decide whether that property has been taken or damaged in a constitutional sense and then determine whether the taking or damaging is for a public purpose. State Through DOTD v. Chambers Inv. Co., 595 So.2d 598 (La.1992.) If so, property owners are constitutionally entitled to just compensation for property taken. The legislative intent of expropriation statutes is to implement Article 1, § 4 of the 1974 Louisiana Constitution by assuring that each owner is justly compensated to the full extent of his loss for property taken or damaged. State DOTD v. Stumpf, 519 So.2d 279 (La.App. 5 Cir.), writ denied, 520 So.2d 753 (La.1988).
The clear intent of the framers of the 1974 Louisiana Constitution was to extend the right to compensation to include not only property owners but also other persons who have legal status to require compensation, including lessees. State, DOTD v. Jacob, 483 So.2d 592 (La.1986). Clearly, Todd’s C Stores, as lessee of property which is involved in an expropriation proceeding, is entitled to recover damages for its losses as a result.
In the instant ease, it was the jury’s role as fact finder to determine the damages to which Todd’s was entitled. The jury evaluated the lessee’s claim and calculated a damage award to compensate him for his losses. The trial court set aside the jury’s evaluation and granted lessee’s motion for JNOV, awarding him the maximum amount of damages that the lessee’s experts alleged he was owed. The question before us is whether the trial judge’s grounds for doing so were sufficient.
The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. art. 1811. The article does not specify the grounds on which the trial judge may set aside a jury verdict. The Official Revision Comments *1210 state that .. a judgment N.O.V. is based on a different standard [from additur and remittitur] — namely, that based on the evidence there is no genuine issue of fact. Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages [or as to liability], it should have the authority to grant the appropriate judgment notwithstanding the verdict.”
Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986) Id. at 273 (footnote omitted). The supreme court further specified the criteria to be used in determining when a JNOV is proper:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott, supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In’ reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991). See also Romero v. Emerson Electric Co., 583 So.2d 544 (La.App. 3 Cir.), writ denied, 589 So.2d 1054 (La.1991) (trial court applying the standard of proof to decide motion for JNOV may not pass on the credibility of the witnesses or substitute its reasonable inferences of the facts for those of the jury); and DOTD v. Wahlder, 554 So.2d 233 (La.App. 3 Cir.1989), writ denied, 558 So.2d 561 (La.1990). (trial court may not usurp credibility evaluations, one of the primary duties of a jury, unless party opposing the directed verdict has failed to produce sufficient evidence upon which reasonable and fair minded persons could differ).
The determination of what amount will compensate an individual to the full extent of his loss must be made on the basis of the facts of each case and in accord with the uniqueness of the property right taken. Naquin v. Dept. of Transp. and Dev., 604 So.2d 62 (La.App. 1 Cir.), writ denied, 608 So.2d 169 (La.1992). The record reveals that the jury in this ease did not blindly accept the estimates of damages which were presented by defendant’s expert witnesses. Conflicting evidence was presented on the amount of damages to which Todd’s was entitled. Each of the experts who testified had a different opinion as to the exact amount of damages to which Todd’s was entitled and it was the jury’s responsibility to weigh the credibility of each witness as to the question of Todd’s losses, and to come up with a damage award.
Defendant-lessee called Frank Hines, a CPA, as an expert to testify as to Todd’s C Stores’ lost profits. Hines testified that over its first four years of operation, the store had an average annual net income of $14,566. Using this $14,566 figure to project lessee’s loss over the remaining seven years of the lease, Hines calculated the total loss for the seven year period to be $78,499, including a 7% discount to reflect present day value.
*1211 Defendant also called Randy LaCaze as an expert in real estate appraisal. Using Hines’ base figure of $78,500, but including a 5% increase in profits per year in addition to the discount to present day value, LaCaze thought defendant’s losses in profits equalled $90,110. To this figure was added LaCaze’s estimate of damages of $14,900 for underground tank removal and parking lot repair, and $17,500 for removal of the canopy, pumps and pump island[1], which brought the lessee’s gross damages to $122,510. Subtracting $13,575 for the liquidation value of the inventory and equipment, LaCaze concluded that defendant’s net loss totalled $108,935.00.
The state challenged defendant’s assertions as to the duration of its lost earnings and as to the value of the lease. It did not challenge (except by cross-examination) defendant’s claims %f annual profits. DOTD’s real estate appraiser, John Mowad, testified as to Todd’s leasehold advantage. Mowad explained that under the present lease, Todd’s was paying $787.50 per month, but that if it had to find another similar rental property it would have to pay $1250.00 per month, which was the current market value, so that for the remaining eighteen months of the lease option period, Todd’s had a leasehold advantage[2] of approximately $462.53 per month, which, after discounting at 10%, Mowad calculated to have a present value of $7701. Calculating the leasehold advantage for the subsequent five year option period at $17,152, the total leasehold advantage for seven years, said Mowad, equalled $24,-853.00. Mowad further stated that if Todd’s could no longer continue to operate its store, then it would also be entitled to $17,500 for removing the pumps and canopy.
After reviewing the evidence, it is clear that reasonable men in the exercise of impartial judgment could reach different conclusions as to the damages sustained by defendant. The jury was not unreasonable in its conclusion that Todd’s was not entitled to lost profits for the entire period for which the defendant claimed losses. The jury did not specify which damages the award was meant to cover because it was provided with no interrogatories for that purpose. Apparently the jury concluded that Todd’s was entitled to damages of approximately two years of lost profits plus the defense expert LaCaze’s appraisal of its net damages for removing the pumps and canopy. This conclusion was reasonable in light of the evidence. Todd’s only netted approximately $14,500 per year, and it was not unreasonable for the jury to have concluded that it would not have exercised its option to extend the lease for an additional five years.
It is clear that the jury did not believe that Todd’s was entitled to recover for seven years of lost profits. The trial judge in this case erred in granting the defendant’s motion for JNOY. In doing so, the trial judge substituted his judgment for that of the jury, which apparently accepted defendant’s estimates of annual net income and net relocation damages, but for a shorter duration of two years. There was conflicting evidence presented as to Todd’s damages; the facts and inferences did not point so strongly and overwhelmingly in favor of the defendant’s recovery for seven years that reasonable men could not arrive at a contrary verdict.
The jury believed that a reasonable time limit should be imposed on Todd’s losses and on that basis did not award him the fall seven years of lost profits which he sought. There is no legal basis in light of the facts of this case for denying the jury its discretion in this regard. See, e.g., State, DOTD v. Diet *1212 rich, 555 So.2d 1355 (La.1990), (jury award for future economic loss based on life expectancy of owner erroneous). As stated in Anderson, supra, a JNOV is not warranted when there is a preponderance of evidence for the mover, but only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions. Although Todd’s presented evidence to support their version of the duration over which damages were sustained, the jury was not obligated to accept any expert’s testimony in calculating Todd’s damages, and there is no exclusive formula for determining damages. The award simply must be related to the totality of the adduced testimony and evidence. State, DOTD v. Brookhollow of Alexandria, 578 So.2d 558 (La.App. 3 Cir.), writ denied, 581 So.2d 709, 710 (La.1991). The jury’s damage award is reinstated as the evidence presented did not warrant the granting of defendant Todd’s motion for JNOV.
Parenthetically, we note that the reasoning contained in the recently reported Packard’s Western Store v. State, D.O.T., 618 So.2d 1166 (La.App. 2d Cir.1993), does not mandate a finding that Todd’s is entitled to compensation beyond the primary term of its lease. Packard’s Western Store is readily distinguishable insofar as in that case the leasehold interested party did make its case as to quantum, and the trial judge did not alter the jury’s determination. Although the Court of Appeal affirmed a jury’s conclusion that a (very profitable) lease would be extended, it did not go so far as to conclude that a party possessing the right to renew a lease would necessarily do so even in the face of marginal profits. Turning to the present case, we cannot say that the jury, reviewing the facts before it, erred in its assessment that the lessee would not continue its lease beyond the primary term; the fact finders could reasonably have concluded that the principals and shareholders would turn elsewhere to achieve greater returns on their capital and labor beyond the initial term of the lease.
ASSIGNMENT OF ERROR NUMBER TWO
DOTD alleges that the trial judge erred in awarding legal interest on the excess award from April 10, 1990, the date of expropriation, until paid; DOTD claims that interest should only begin to run on January 18, 1991, the date of legal demand.
The Supreme Court in State Through DOTD v. Estate of Davis, 572 So.2d 39, 44 (La.1990) held that a 1988 amendment to R.S. 48:455 could not be given retroactive effect, stating:
“Legal interest is a matter of substantive law and a change in the law that alters an award of legal interest should not be given retroactive effect unless the legislature so provides.” (citations omitted).
The language of LSA-R.S. 48:455 in effect at the time of the instant expropriation read as follows:
If the amount finally awarded for compensation exceeds the amount deposited, the judgment shall include legal interest on the excess from the date of legal demand until paid, but such interest shall not accrue on any award made for expert fees or attorney fees prior to judgment. (Emphasis added)[3]
Applying this statute in Matthews v. City of Alexandria, 587 So.2d 799 (La.App. 3 Cir.), writ denied, 592 So.2d 1285 (La.1991), we held that interest is payable on any excess judgment from the date of the answer (legal demand) rather than from the date of the taking (order of expropriation), stating that, “Legal demand means the date a defendant-landowner files an answer to the State’s quick-taking suit to seek an award greater than the amount of the State’s deposit.” *1213 Matthews, at 799 citing State, DOTD v. Anderson, 568 So.2d 657 (La.App. 3 Cir.1990). Applying the same statute under nearly identical circumstances, we see no reason to deviate from that course now. Therefore, we hold that the trial court erred in awarding legal interest from April 10, 1990, the date of the order of expropriation. The judgment is amended to award legal interest from date of legal demand, January 18, 1991.
DECREE
Judgment in favor of Todd’s C Stores, Inc. in the amounts specified by the jury, with legal interest thereon from January 18, 1991 until paid, less a credit for sums tendered by the state. Defendant-appellee Todd’s C Stores, Inc. to pay all costs of this proceeding.
REVERSED AND RENDERED.

. This figure was not opposed by a 1990 estimate by Michael Graham, the state's appraiser, whose 1988 estimate placed the figure at $14,790. He testified that he did not believe that Todd's was entitled to any other damages.

. A leasehold advantage can be described as the difference between rent due under terms of the lease and the greater amount one would have to pay to find a similar property at currently prevailing market rates. Packard’s Western Store v. State, D.O.T., 618 So.2d 1166, 1176 (La.App. 2d Cir.1993), and cites therein. Obviously, a party locked into a lease calling for higher than those currently available enjoy no leasehold advantage.

. LSA-R.S. 48:455 was amended in 1992 to provide as follows:
If the amount finally awarded for compensation exceeds the amount deposited, the judgment shall include legal interest on the excess from the date of presentation of the petition as provided in R.S. 48:422 until paid, but such interest shall not accrue on any award made for expert fees or attorney fees prior to judgment. (Emphasis added)