h SULLIVAN, Judge.
Defendants, Stanley Strickland, Ferrell-gas, Inc., and National Insurance Company, appeal a judgment notwithstanding the verdict (JNOV) granted in favor of Plaintiffs, Allyson and Eddie Mustiful, individually and as natural tutors of their minor children, Brandon and Latoya. The Plaintiffs have answered the appeal, seeking additional relief. For the following reasons, we amend in part, reverse in part, and render.
FACTS
On January 6,1996, Mr. Strickland rear-ended a vehicle driven by Mrs. Mustiful, with her two children as passengers, as both drivers attempted to enter a traffic circle in Alexandria, Louisiana. Mrs. Mustiful had stopped at the yield sign | ^controlling the circle, then proceeded forward, but she soon stopped again, claiming that a vehicle already in the circle was crossing into her lane. Mr. Strickland had stopped behind Mrs. Mustiful at the yield sign and then advanced while still checking for traffic on the left. When he looked forward again, he saw that Mrs. Mustiful had stopped a second time, but he could not avoid the collision. The impact resulted in heavy damage to the rear of the Mustiful vehicle, in part because Mr. Strickland, a Ferrellgas employee, was driving a company truck with a bumper higher than Mrs. Mustiful’s. Mr. Strickland disputed Mrs. Mustiful’s claim that a vehicle was merging from the circle, insisting that their lane was clear. He also testified that Mrs. Mustiful stated at the scene that she stopped a second time because she wanted to change lanes.
Mrs. Mustiful had suffered from migraine headaches for approximately one year before this accident. After this accident, she returned to her treating neurologist, Dr. Riad Hajmurad, with complaints of more severe headaches, plus neck pain and lower back pain. She also reported numbness and pain in the right arm and in the lower extremities. After one year of conservative treatment with Dr. Hajmu-rad, Mrs. Mustiful underwent a C2-3 fusion performed by Dr. Stuart Phillips, an orthopedic surgeon in New Orleans, Louisiana. Dr. Hajmurad also treated Brandon for two months and Latoya for six months.
After trial on the merits, the jury apportioned 75% fault to Mr. Strickland and 25% fault to Mrs. Mustiful. The jury *743 awarded Mrs. Mustiful $35,841.20 in medical expenses, $15,000.00 in past physical and mental pain and suffering, and $4,000.00 in loss of past income. In addition to medical expenses of $937.00 for Brandon and $1,922.00 for Latoya, the jury awarded $1,000.00 for each child’s general damages. ]3The jury rejected Mrs. Mustiful’s claims for future medical expenses, future pain and suffering, future loss of income, and disability and disfigurement. The jury also rejected Mr. Mustiful’s loss of consortium claim.
In granting the Plaintiffs’ motion for JNOV on liability and damages, the trial court (1) found Mr. Strickland 100% at fault, (2) increased Mrs. Mustiful’s general damages to $75,000.00, (3) increased the children’s general damages to $2,000.00 for Brandon and $3,000.00 for Latoya, (4) awarded Mrs. Mustiful $25,000.00 in future loss of income/earning capacity, and (5) awarded Mr. Mustiful $5,000.00 for loss of consortium. On appeal, Defendants seek reinstatement of the jury verdict in its entirety, and Plaintiffs seek an increase in damages awarded.
OPINION
A JNOV is authorized by La.Code Civ.P. art. 1811; however, the standard for granting a JNOV is found in the jurisprudence. In Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991) (emphasis added), the supreme court enunciated the criteria for the trial court in considering a motion for JNOV and for the appellate court in reviewing the trial court’s action:
A JNOV is warranted when ... the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott [v. Hospital Serv. Dist. No. 1, 496 So.2d 270 (La.1986) ]. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point sojjstrongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
This stringent standard is based on the principle that “[wjhen there is a jury, it is the trier of fact.” Jinks v. Wright, 520 So.2d 792, 794 (La.App. 3 Cir. 1987), citing La.Code Civ.P. art. 1736 and Scott, 496 So.2d 270. In granting a JNOV, a trial court “may not weigh the evidence, pass on the credibility of the witnesses, or substitute its reasonable inferences of the facts for those of the jury.” Webb v. Goodley, 512 So.2d 527, 530 (La.App. 3 Cir.1987). Because a JNOV represents an abrogation of the jury’s role, “we must inspect the action with care.” Jinks, 520 So.2d at 794.

Apportionment of Fault

After reviewing the record, we find that reasonable minds could reach different conclusions about whether Mrs. Mustiful was negligent in this accident. The jury was presented with conflicting evidence concerning Mrs. Mustiful’s conduct, *744 and its apportionment of fault represents a credibility determination.
In Rudd v. United Services Automobile Association, 626 So.2d 568, 570 (La.App. 3 Cir.1993) (emphasis added) (citation omitted), we explained the duties of the following and leading motorists:
It is firmly established that the operator of a following vehicle is required to keep his car under control, to observe closely a forward vehicle, and to follow at a safe distance. If a rear end collision occurs, the following motorist is presumed negligent. For the following motorist who collides with a preceding vehicle to exculpate himself, he must show that he kept his vehicle under control, that he closely observed the forward vehicle, that he followed at a safe distance under Isthe circumstances, or that the driver of the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid.
Mr. Strickland admitted that he proceeded forward while still looking to the left for traffic. This testimony clearly supports a substantial percentage of fault being assigned to him, as reflected in the jury’s verdict of 75% fault to Mr. Strickland and 25% to Mrs. Mustiful. By reallocating all fault to Mr. Strickland, however, the trial court ignored the conflicting factual testimony about why Mrs. Mustiful stopped a second time. Mrs. Mustiful testified that she perceived a vehicle from the inner lane of the traffic circle crossing into the outer lane as she attempted to enter the circle. Mr. Strickland, who was merging into the same lane as Mrs. Mustiful, testified that their lane was clear and that he saw no reason why Mrs. Mustiful should have stopped. Mr. Strickland also testified that Mrs. Mustiful told him she stopped because she wanted to change from the outer lane to the inner lane. From this testimony, the jury could have found that Mrs. Mustiful negligently created the emergency by stopping for no reason.
In McKinley v. Bekins Moving & Storage Co., Inc., 449 So.2d 705 (La.App. 4 Cir.), writ denied, 456 So.2d 167 (La.1984), which presents a strikingly similar fact pattern, the appellate court upheld the jury’s allocation of 10% fault to a motorist hit from behind as she attempted to enter a traffic circle. The plaintiff insisted she stopped only once before entering the circle; however, the defendant, who admitted looking to the left to check for traffic, maintained the plaintiff started forward, then stopped again, before the accident. The jury in McKinley apparently resolved the conflicting testimony against the plaintiff. In the instant case, we find the trial court erred in disregarding the jury’s determination of fault.
| General Damages
The trial court increased Mrs. Mustiful’s general damages from $15,-000.00 ($10,000.00 in past physical pain and suffering and $5,000.00 in past mental pain and suffering) to $75,000.00. Defendants contend that this was error, given the conflicting medical opinions about the extent of Mrs. Mustiful’s injuries and whether the cervical fusion performed by Dr. Phillips was medically necessary. The Plaintiffs argue that the JNOV is inadequate, citing several cases awarding higher amounts for a cervical fusion.
In Anderson, 583 So.2d at 834 (emphasis added), the supreme court explained:
The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in Scott, supra, i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury’s damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the dam *745 ages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco [v. Winston Industries, Inc., 341 So.2d 332 (La.1976)].
After reviewing the medical evidence detailed below, we find that the trial court did not err in granting the JNOV as to Mrs. Mustiful’s general damages; however, we find error in the amount of damages the trial court awarded. In increasing the general damages to $75,000.00, the trial court found that Mrs. MustifuFs cervical fusion was medically necessary and caused by the accident. Although the medical evidence revealed corroborating, objective findings at two levels in the cervical spine and in the lumbar spine, the experts strongly disagreed about whether these findings required surgical intervention.
| ./Twelve days after the accident, Mrs. Mustiful returned to Dr. Hajmurad, who had previously treated her for migraine headaches. Before the accident, Dr. Hajmurad had prescribed Imitrex for the these headaches, and he believed Mrs. Mustiful had responded well to that treatment. After this accident, Mrs. Mustiful complained of more severe headaches, neck pain, lower back pain, arm pain, and tingling in the hands. She also related unexplained instances of dropping objects from her hands. Dr. Hajmurad ordered an EMG, which revealed mild irritability of the C5-6 nerve root. When medication and physical therapy did not relieve Mrs. MustifuFs symptoms, Dr. Hajmurad ordered an MRI. This test revealed bulging discs at C2-3 and C5-6. Interpreting these findings as “mild,” Dr. Hajmurad recommended continued conservative treatment. He later ordered a myelogram, which suggested small bulges at C5-6 and C6-7, and a post-myelogram CT scan, which did not reveal any significant bulging.
Dr. Hajmurad described Mrs. MustifuFs case as “puzzling” because he found no explanation for the severity of her upper extremity complaints. Notwithstanding the normal post-myelogram CT scan, Dr. Hajmurad did believe Mrs. Mustiful had some bulging at C2-3. He explained, however, that bulging at this level is generally associated with headaches or neck pain and that it would not produce numbness and tingling in the hands. (He also stated that an injury as high as C2-3 was unusual in an automobile accident.) Dr. Hajmurad further questioned whether the one millimeter bulge at C5-6 was significant enough to cause Mrs. MustifuFs arm pain. (He explained that a disc is not considered herniated unless it protrudes at least three millimeters.) Although Dr. Hajmurad did not consider Mrs. Mustiful a surgical | ¡¡candidate, he explained that, as a neurologist, he did not make the final decision of whether or not to operate.
In February of 1997, Mrs. MustifuFs attorney referred her to Dr. Phillips. At his initial examination, Dr. Phillips observed tenderness and loss of motion in the neck and a positive Adson’s sign, or loss of pulse when the arm is raised overhead. Reviewing the reports of the previous diagnostic tests, Dr. Phillips concluded that Mrs. Mustiful had two “bad discs,” C2-3 and C5-6, with the more serious one being the former. After performing a dis-cogram at both levels on March 11, 1997, Dr. Phillips detected a tear in the ligament surrounding the disc at C2-3. He also testified that, as he performed the discogram at C2-3, Mrs. Mustiful experienced severe, immediate pain in her right arm. Believing that surgery presented a “good chance” of relieving Mrs. MustifuFs headaches and neck pain, Dr. Phillips performed a fusion at C2-3 on April 21, 1997. Post-operatively, the fusion appeared stable, but Mrs. Mustiful still complained about headaches and numbness in the right hand. In October of 1997, Dr. Phillips ordered .a lumbar EMG to investigate Mrs. MustifuFs continued complaints of back pain. The EMG showed inflammation of the nerves, indicating injury to the ligaments, but these findings did not indicate surgery.
At Defendants’ request, Mrs. Mustiful was examined by Dr. Monroe Laborde, an *746 orthopedic surgeon, on November 1, 1997. At this visit, Mrs. Mustiful reported that the surgery decreased, but did not eliminate, her neck pain. She still had complaints of lower back pain, right arm pain, leg pain, and numbness in the right fingers. She also reported episodes of her “entire legs” hurting and going numb, for which Dr. Laborde had no physical explanation. Reviewing the past diagnostic studies, Dr. Laborde found that they revealed a minor focal bulge at C2-3 and a one 19millimeter bulge at C5-6. Because he saw no evidence of nerve root compression at C2-3, Dr. Laborde believed that the surgery performed by Dr. Phillips was unnecessary and that Mrs. Mustiful would have fared better without it. He considered a diagnosis based upon a discogram unreliable, stating that the test almost always produces abnormal findings and promotes surgery for those who do not need it. He considered Mrs. Mustiful’s continued complaints to be non-organic, i.e., from psychological factors rather than physical findings.
The jury awarded Mrs. Mustiful all past medical expenses, which totaled $35,841.20. Defendants argue that this award was not based on a finding that the accident caused the need for surgery or that the surgery was medically necessary. Rather, they contend that the jury, as instructed by the trial court, did not want to penalize Mrsi Mustiful for undergoing unnecessary medical treatment in good faith. We find this argument persuasive, considering Dr. Hajmurad’s failure to recommend surgery and Dr. Laborde’s opinion that surgery was not necessary. Plaintiffs argue that Dr. Phillips’ testimony, as that of Mrs. Mustiful’s treating physician, should be afforded more weight than Dr. Laborde’s. While we agree with this general principle, we must point out that Dr. Hajmurad was also Mrs. Mustiful’s treating physician. Significantly, we note that Dr. Hajmurad, who treated Mrs. Mustiful for approximately one year after the accident, never discussed surgery with her or referred her for a surgical evaluation.
In Sutton v. Lambert, 94-2301 (La.App. 1 Cir. 6/23/95); 657 So.2d 697, writ denied, 95-1859 (La. 11/3/95); 661 So.2d 1384, the plaintiff underwent a cervical discectomy (also performed by Dr. Phillips), even though several other physicians had diagnosed only a long-standing soft tissue, stretching, or tractional type injury. |inA jury awarded the plaintiff, inter alia, $33,-000.00 for physical pain and suffering and $5,000.00 for personal injury and disability, but it did not award the medical expenses associated with the surgery. The trial court denied the plaintiffs motion for JNOV. The appellate court affirmed the denial of the JNOV as to the award for physical pain and suffering, but it found the plaintiff was entitled to additional medical expenses — not because the accident caused the need for surgery — but because the plaintiff did not' incur expenses of the unnecessary surgery in bad faith. Concerning the plaintiffs request for additional general damages for physical pain and suffering, the appellate court stated: •
Based on the evidence, reasonable minds could conclude that the plaintiff did not sustain a disc injury requiring surgery due to the accident and therefore, that the surgery was unnecessary. The jury’s award of medical expenses supports such a conclusion as the jury awarded the plaintiff all of his medical expenses' except those associated with the surgery. Thus, based upon the evidence, reasonable minds could conclude that the defendants were not responsible for any general damages associated with the surgery.
Id. at p. 11; 657 So.2d at 704 (emphasis added). The appellate court did find that the jury should have compensated the plaintiff for his mental pain and suffering, awarding $7,500.00 for this element of damages (thereby raising the total general damages to $45,500.00).
In the instant case, Mrs. Mustiful’s complaints of pain are supported by objective medical evidence: an EMG, an MRI, and a *747 myelogram document defects at C2-3 and at C5-6; a second EMG performed one year and seven months after the accident identified inflammation of the lumbar nerves, indicating a ligament injury. Based on the above, we find that the trial court properly granted a JNOV as to Mrs. Mustiful’s general damages.
Pursuant to Anderson, 583 So.2d at 834, we must next review the trial court’s award “under the constraints of Coco, supra.” To the extent that the trial court awarded general damages for the cervical fusion, we find clear error. Dr. Hajmurad described the findings supporting surgery as “mild” and “borderline;” Dr. Hajmurad and Dr. Laborde were in agreement that a fusion at C2-3 would not help Mrs. Mustiful’s upper extremity complaints, and their testimony casts doubt on Dr. Phillips’ testimony that the discogram at the C2-3 level produced immediate and severe right arm pain. Under Coco, 341 So.2d 332, we may reduce the award only to highest amount reasonably within the trier of fact’s discretion. For Mrs. Mustiful’s chronic cervical and lumbar pain due to nerve irritation and ligament injury, we find that amount to be $40,000.00. See Iorio v. Grossie, 94-846 (La.App. 3 Cir. 10/4/95); 663 So.2d 366; Sutton, 657 So.2d 697.
We further find that the trial court erred in increasing the awards for Brandon’s and Latoya’s general damages. Dr. Hajmurad diagnosed each child with a mild whiplash injury and a mild concussion, but he admitted that this opinion was based upon Mrs. Mustiful’s descriptions of the children’s symptoms and of the accident. Although Dr. Hajmurad treated Brandon and Latoya for two months and six months, respectively, he did not observe any objective symptoms or neurological deficits. His continued treatment of Latoya was based in part on his desire to monitor a weak muscle in her right eye, but additional testing failed to reveal any abnormalities and he did not relate this symptom to the accident. The jury’s awards of $1,000.00 for each child’s general damages are well-supported in the record,

h¡Loss of Earning Capacity

Dr. Phillips and Dr. Laborde also disagreed on Mrs. Mustiful’s physical limitations after the surgery. Dr. Phillips assigned Mrs. Mustiful a 20% disability of the cervical spine and a 10% disability of the body as a whole. Taking into account the surgery and the lumbar problem, Dr. Phillips restricted Mrs. Mustiful to lifting no more than ten to twenty pounds. With these restrictions, Dr. Phillips opined that Mrs. Mustiful could not return to her former job as a nursing assistant. Dr. Laborde, however, testified that a C2-3 fusion usually does not carry any work restrictions because that level does not have a large effect on range of motion. He assigned her a 5% disability rating of the body as a whole, and he believed that she could continue working as a nursing assistant.
As a certified nursing assistant, Mrs. Mustiful was a minimum-wage worker. Her average annual income from this employment for the three years before the accident was $6,000.00. At the time of the accident, she was not employed because she was recovering from a recent hysterectomy. Dr. Richard Galloway, a vocational rehabilitation counselor, testified that, academically, Mrs. Mustiful functioned at a seventh or eighth grade level, even though she graduated from high school with a “B” average. Even with Dr. Phillips’ restriction to sedentary employment, Dr. Galloway believed that Mrs. Mustiful could still earn minimum wage, although the pool of jobs available to her would be reduced because of her physical limitations. Dr. Galloway admitted that she could still earn as much money as she did before the accident, but he pointed out that she would face competition for fewer jobs.
Dr. Robert Eisenstadt, professor of economics at Northeastern State University, produced several mathematical calculations projecting loss of future income *748 based 113upon assumptions that Mrs. Must-iful would not work at all in the future or would work reduced hours until the ages of either forty-eight or sixty-two. On cross-examination, Dr. Eisenstadt admitted that Mrs. Mustiful could have no loss of earnings if she could perform light or sedentary work.
In measuring loss of future earnings or earning capacity, the plaintiffs earnings before and after the accident are relevant but not determinative. Hobgood v. Aucoin, 574 So.2d 344 (La.1990). “[D]amages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity.” Id. at 346. In Callihan v. Town of Vinton, 95-665, p. 8 (La.App. 3 Cir. 12/6/95); 668 So.2d 735, 741 we explained:
The factors to be considered in determining future loss of income includes [sic] the plaintiffs physical condition before and after his injury, his past work record and the consistency thereof, the amount the plaintiff probably would have earned absent the injury complained of, and the probability he would have continued to earn wages over the balance of his working life.
Dr. Eisenstadt calculated Mrs. Mustiful’s past lost wages for the two years between the accident and trial at $12,-000.00. The jury, however, awarded only $4,000.00 for past lost wages and nothing for future loss of income or earning capacity. The jury had before it evidence that Mrs. Mustiful had only a sporadic work history. She was unemployed at the time of the accident, having resigned her last job to recover from surgery. Although she was twenty-eight years old at the time of the accident, she had worked for only three or four years as a nurse’s aide and she had averaged less than full-time earnings at minimum wage. It is undisputed that Mrs. Mustiful can still earn minimum wage, even under Dr. Phillips’ restrictions. Although Dr. Phillips’ restrictions suggest that Mrs. Mustiful may have difficulty | uworking forty hours per week, Dr. La-borde’s do not. Again, we cannot conclude that the evidence is so overwhelmingly in Mrs. Mustiful’s favor that the jury’s verdict on this issue should be set aside.

Loss of Consortium

Mr. Mustiful testified that since the accident, he has had to assume much of the household work, including bathing the children, doing the laundry, lifting heavy pots and pans in the kitchen, and mopping. He also described the changes in his wife’s personality, including moodiness and nervousness. Notwithstanding this testimony, the jury chose not to make an award for this element of damages. The jury’s decision could have been based on an unfavorable assessment of the Mustifuls’ credibility or on a belief that Mrs. Mustiful’s injuries were not as serious as claimed. In Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97); 689 So.2d 503, we declined to disturb a jury’s rejection of a loss of consortium claim, even though we indicated that we may have decided the issue differently. In the instant case, we find the trial court erred in substituting his evaluations for those of the jury.
DECREE
For the above reasons, the JNOV granted in favor of Plaintiffs is amended to reduce Allyson Mustiful’s general damages to $40,000.00. In all other respects, the JNOV is reversed and the jury verdict is reinstated. Costs of this appeal are assessed to Plaintiffs.
JNOV AFFIRMED IN PART AS AMENDED AND REVERSED IN PART; JURY VERDICT REINSTATED IN PART; AND RENDERED.